UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| ANTHONY F. ROSCITI, JR.; and SHANNON B. ROSCITI<br>Plaintiffs<br><br>v.<br><br>THE HANOVER INSURANCE GROUP; SOUTH SHORE UTILITY CONTRACTORS, INC., by and through Jonathan N. Savage, Esq., duly appointed Permanent Receiver of South Shore Utility Contractors, Inc.; HENRY V. ROSCITI; and AHR UTILITY CORPORATION,<br>Defendants | CIVIL ACTION NO. 1:06-cv-00392-T |

THE HANOVER INSURANCE GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS CONSOLIDATED OBJECTION TO THE MOTION FOR REMAND OF DEFENDANT SOUTH SHORE UTILITY CONTRACTORS, INC., BY AND THROUGH ITS DULY APPOINTED PERMANENT RECEIVER, JONATHAN N. SAVAGE, ESQ. AND MOTION FOR REMAND OF PLAINTIFFS ANTHONY F. ROSCITI, JR. AND SHANNON B. ROSCITI

Defendant, The Hanover Insurance Group ("Hanover"), by and through counsel, hereby submits this Memorandum of Law in support of its consolidated objection to the Motion for Remand filed by defendant, South Shore Utility Contractors, Inc., by and through its duly appointed permanent receiver, Jonathan N. Savage, Esq. ("South Shore") and Motion for Remand filed by plaintiffs Anthony F. Rosciti, Jr. and Shannon B. Rosciti (collectively, "the Roscitis").

**FACTS**

South Shore was a utility contractor doing, among other things, public jobs requiring surety bonds in Rhode Island. South Shore came to Hanover in early 2005 seeking surety bonds.

As partial consideration for Hanover agreeing to write bonds on behalf of South Shore, Indemnitors Roscitis, Henry Rosciti, AHR Utility Corporation ("AHR") and South Shore executed an Agreement of Indemnity dated May 31, 2005 ("Indemnity Agreement"). Among other things, the Indemnitors agreed, jointly and severally to: (1) indemnify and hold harmless Hanover from all loss, costs, attorney fees, interest, etc. occasioned by its having written bonds on behalf of South Shore; (2) post cash collateral with Hanover when liability existed or was asserted against Hanover under the bonds in an amount satisfactory to Hanover; (3) assign all right and title to bonded and unbonded contract proceeds to Hanover, enforceable when the Indemnitors or any one of them, were in default of the Indemnity Agreement; and (4) covenant and agree that all bonded contract funds are held in trust for payment of bonded obligations on bonded construction jobs. Violation of any of these promises or covenants constituted a material default of the Indemnity Agreement.

In reliance of these promises, Hanover wrote performance and payment bonds on behalf of South Shore on two projects. Hanover wrote a total of five bonds on a project known as the Pawtucket Water Treatment Facility ("Pawtucket Project") totaling $7,640,000. These bonds principally obligated South Shore, as principal, and Hanover, as surety, to complete the project pursuant to the underlying contract and pay all labor and material suppliers. The bond was written in favor of the obligees, O. Ahlborg, Inc. and Earth Tech, Inc., as obligees.[1]

[1] Defendant South Shore, in its Memorandum in support of its Motion to Remand, page 7, incorrectly references these bonds as imposing an obligation from Hanover to South Shore. A surety bond is a three-party agreement whereby the obligee requires the principal to guaranty its underlying obligations, typically under a separate contract, to the obligee by obtaining a surety bond, whereby the surety becomes secondarily obligated to the obligee. The surety owes no obligation to the principal (South Shore), but only to the obligee. In fact, if the surety is obliged to pay under the bond, it has common law rights of subrogation against the principal, in addition to any rights under a separate Indemnity Agreement. See, generally, Restatement 3d, Suretyship and Guaranty.

Hanover also wrote a performance and payment bond on an Amtrak project in Pawtucket, Rhode Island ("Amtrak Project") in the amount of $365,900. Again, South Shore, as principal, and Hanover, as surety, generally obligated themselves to perform the work under the underlying contract and to pay claimants which had supplied labor or material to South Shore on the project. Overall, Hanover expects losses of nearly $2 million under the bonds for these two projects, net of remaining contract funds on each.

Hanover began receiving claim notices under the above payment and performance bonds beginning in November of 2005. Specifically, Hanover received claims from one subcontractor and from one materials supplier on the Pawtucket Project totaling $1.3 million. Each claimant alleged that South Shore had received contract funds for their work from the obligees on the bonds, but had not paid these funds over to them for the accepted work and/or materials. The obligees on the Pawtucket Project confirmed to Hanover that they, in deed, had paid South Shore for the labor and material relating to these two claims, and looked to Hanover to resolve both payment bond claims.

By letter dated March 17, 2006, and pursuant to the terms of the Indemnity Agreement, Hanover made demand for collateral in the amount of $1.3 million against all indemnitors. The indemnitors failed or refused to post collateral with Hanover. By letters dated March 21, 2006, Hanover wrote to the obligees on the Pawtucket and Amtrak Projects and asked each not to pay any additional contract funds to South Shore without Hanover's prior, written consent.

By letter dated April 13, 2006, from the Indemnitors to Hanover, the Indemnitors each acknowledged that they were presently financially unable to perform their obligations under the relevant contracts and bonds and were in default of their obligations under the bonds and Indemnity Agreement. Indemnitors expressly reaffirmed their joint and several obligations

under the Indemnity Agreement. In addition, by letters also dated April 13, 2006, South Shore wrote to the two obligees on the above projects and irrevocably and voluntarily terminated their construction contract with each effective upon receipt of the letters. Further, South Shore irrevocably directed all payments due or to become due under the contracts be made payable solely at the direction of Hanover. In addition, South Shore abandoned each of the projects on or about April 7, 2006.

Over the course of the months between April and June 2006, Hanover re-let the Pawtucket Project to a completing contractor by tendering the contractor to the obligee under the performance bond. During this same period of time, Hanover arranged for the completion of the Amtrak Project. Finally, Hanover has paid $520,000 to the subcontractor referenced above and is in the process of settling the claim with the material supplier.

On or about May 12, 2006, plaintiff Anthony Rosciti filed a petition in Rhode Island Superior Court placing South Shore in receivership. (Anthony Rosciti is 50% shareholder and president of South Shore.) Jonathan Savage, Esq. was appointed permanent receiver on or about June 5, 2006. (Providence Superior Court, P.M. No. 06-2623.)

**PROCEDURAL HISTORY**

On June 12, 2006, Hanover initiated action in this Court (Civil Action No. 1:06-cv-00276) against the Roscitis, Henry Rosciti and AHR as joint and several obligors under the Indemnity Agreement on counts of breach of contract, declaratory relief and specific performance, all related to their obligations under the Indemnity Agreement ("Hanover Action"). In response, the Roscitis filed a motion to dismiss Hanover's action on or about August, 1, 2006. Hanover objected. Per his Report and Recommendation dated October 13, 2006, U.S. Magistrate Judge, Lincoln D. Almond, recommended that the Roscitis' Motion to Dismiss be denied as well

as their request for a stay. Magistrate Judge Almond specifically found that South Shore was neither an necessary nor indispensable party under Federal Rule of Civil Procedure 19.

On August 1, 2006, rather than file its compulsory counterclaims to the Hanover Action, the Roscitis filed a separate action in Rhode Island Superior Court ("Rosciti Action"). In its complaint, the Roscitis name Hanover and its co-indemnitors (South Shore, Henry Rosciti and AHR) as defendants. The complaint ("Rosciti Complaint") includes a Count I for declaratory relief under the Rhode Island Declaratory Judgment Act (R.I. Gen. Laws § 9-30-1 *et seq*.). (Rosciti Complaint, pages 4-6.). In this Count, the Roscitis merely allege that "a dispute has arisen" and goes on to seek certain declaratory relief all relating to their underlying claims against Hanover. In fact, no where in the count for declaratory relief do the Roscitis even mention the other defendants. The Roscitis also allege breach of contract (Count II, pages 6,7), tortious interference with contract (Count III, pages 7,8), tortious interference prospective business advantage (Count IV, page 8), bad faith (Count V, pages 8,9), breach of fiduciary duty (Count VII, pages 9,10), and unfair and deceptive acts or practices under Massachusetts General Laws, ch. 93A § 11 (Count VIII, pages 10,11). (There is no Count VI).

Again, allegations in Counts II-VIII are solely directed against the alleged actions or inactions of Hanover. The other defendants (Roscitis' co-indemnitors South Shore, Henry Rosciti and AHR) are neither mentioned, nor is there any cause of action stated or alleged against any of these co-defendants.

In fact, other than mentioning in its general allegations that South Shore, Henry Rosciti and AHR, together with the Roscitis, signed the Indemnity Agreement, and that Hanover wrote bonds for South Shore, the Rosciti Complaint refers to South Shore, Henry Rosciti and AHR only in paragraphs 4, 5 and 6, respectively. In each of those paragraphs, after alleging the

residence of each defendant, Roscitis assert that South Shore, Henry Rosciti and AHR are all "nominal defendant(s) in the above entitled action." In other words, the Roscitis state absolutely no cause of action against any of the defendants other than Hanover, and seek no relief against these defendants under any of the counts of the Rosciti Complaint, the sole claims for relief being directed against Hanover.

The Roscitis filed a motion to consolidate the Rosciti action with the receivership action. The Superior Court ordered the cases consolidated, but under an Amended Order clarified that the cases were consolidated solely for purposes of procedural administration and discovery. Otherwise, the actions remain separate and distinct.[2]

Hanover filed its Notice of Removal on September 1, 2006 in this matter. On September 6, 2006, subsequent to the removal of this case, South Shore filed an Answer to the Rosciti Action. In response to Counts II-VIII (there is no Count VI), South Shore responds that plaintiffs are either not making any claim against South Shore or appear not to be making any claim against South Shore. South Shore also claims, through the Receiver, that to the extent Roscitis are making a claim on behalf of South Shore, that the receiver has ownership of those claims.

Hanover filed a Motion to Consolidate in the Hanover Action requesting that the Hanover Action be consolidated with the Rosciti Action. This Motion is pending before this Court.

[2] Roscitis allege in their Memorandum in support of their Motion to Remand, Page 4, that the Superior Court, in ordering the consolidation, "impliedly determined these matters to sufficiently implicate common issues of law and/or fact, and the principles of judicial economy and efficiency suggested that the Superior Court would be the best forum to adjudicate the substantially similar issues and/or claims to be advanced by the interested parties therein." The actual wording of the relevant part of the Amended Order is much shorter: "Rosciti's motion to consolidate is GRANTED solely for purposes of procedural administration and discovery." In other words, the actions would continue to remain separate for trials and every other matter.

**PROCEDURAL POSTURE**

On September 1, 2006, pursuant to 28 U.S.C. § 1441, Hanover filed its notice removing this action from the Providence, Rhode Island Superior Court. Both plaintiff Roscitis and defendant South Shore have filed Motions for Remand, both filed on September 29, 2006. Hanover files this consolidated opposition to both motions.

Pursuant to 28 U.S.C. § 1441, a case may be removed if there is jurisdiction in the federal court. Under 28 U.S.C. § 1332, the district court has original jurisdiction in cases involving citizens of different states where the matter in controversy exceeds the sum of $75,000. Normally, if there is not complete diversity, the case must be remanded pursuant to 28 U.S.C. § 1447(c). Actions can be removed from state to federal court "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

In addition, "as a general rule, all defendants must join in a removal petition in order to effect removal (citations omitted)." *Oliveras v. Pittsburgh Corning Corp.*, 36 F. Supp. 2d 443, 444 (D. P.R. 1999).

The burden of demonstrating that an action should be removed is on the party seeking removal. *Coughlin v. Nationwide Mut. Ins. Co.,* 776 F. Supp. 626 (D. Mass. 1991). In the case of *Noguera-Cartagena v. Rossello-Gonzalez,* 182 F.R.D. 380, 383-384 (D. P.R. 1998), the Court stated that: "removal statutes are strictly construed against removal. Generally, all doubts are resolved in favor of remand." The Court then went on to deny the motion for remand after it, on its own initiative, in order to preserve diversity, joined a party that plaintiff had dismissed.

The Courts have consistently held that only the pleadings filed by the time the action is removed should be considered when deciding if removal is proper. *Salem Trust Company v. Manufacturers Finance Co.*, 264 U.S. 182, 189 (1924) ("the right of removal depends upon the

case disclosed by the pleadings when the petition therefor is filed"); *Ching v. Mitre Corp.*, 921 F. 2d 11,13 (1st Cir. 1990) ("the District Court properly determined the nature of plaintiff's claims from the face of the complaint as it stood at the time the petition for removal was filed"); *Marsden v. Southern Flight Service, Inc.*, 192 F. Supp. 418, 420 (D. M.D.N.C. 1961) ("in considering a motion to remand, the Court must restrict itself to the allegations in the complaint, and the relief sought").

**ARGUMENT**

In its Removal Notice, Hanover acknowledges that plaintiff Roscitis and co-defendants South Shore, Henry Rosciti and AHR are all citizens of Rhode Island. Hanover is incorporated in Delaware and has its principal place of business in Massachusetts. Additionally, none of the co-defendants have consented to this removal.

Under removal statute, 28 U.S.C. § 1441, the action is removable on diversity grounds "only if none of the parties **in interest** properly joined and served as defendants is a citizen of the State in which such action is brought." (28 U.S.C. § 1441(b)) (emphasis added). Two "very important judicially recognized exceptions" to the rules of complete diversity and unanimous consent among defendants are that nominal parties and fraudulently joined parties may be disregarded for purposes of both rules. *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction* 3D §§ 3723 and 3731 (1998); *Salem Trust Company v. Manufacturers Finance Co.*, 264 U.S. 182, 189 (1923) ("Jurisdiction cannot be defeated by joining formal or unnecessary parties"); *Wilson v. Republic Iron and Steele Co.*, 257 U.S. 92, 97 (1921) ("this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy").

Alternatively, before determining removability under § 1441(b) on the basis of diversity of citizen jurisdiction, "the District Court will realign the parties according to their true interests in the outcome of the litigation as it would were the case brought in Federal Court originally." *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction* 3D § 3723, page 606 (1998); *White v. United State Fidelity and Guaranty Co.*, 356 F. 2d 746 (1st Cir. 1966).

Co-defendants South Shore, AHR and Henry Rosciti are all "nominal parties" to this action. In addition, these defendants have been fraudulently or improperly joined in this action. On either ground, the citizenship of these parties should not be taken into account by the Court for diversity purposes. Alternatively, these co-defendants should be realigned by the Court as party plaintiffs with the Roscitis.

**FRAUDULENT JOINDER**

In the First Circuit and in the Rhode Island District Courts, fraudulent joinder is a well-recognized exception to the requirement of complete diversity of citizenship. *Poly Plastics, Inc. v. Transconex, Inc.*, 713 F. 2d 875, 877 (1st Cir. 1983) ("a party fraudulently joined to defeat removal…is disregarded in determining diversity of citizenship"); *Coughlin v. Nationwide Mut. Ins.*, 776 F. Supp. 626, 628 (D. Mass. 1991) ("fraudulent joinder exists when the complaint in effect at the time of removal states no claim against the non-diverse defendant."); *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1,5 (D. Mass. 2001) ("a mere theoretical possibility of recovery under state law does not suffice to preclude removal") (Citation omitted); *Gabrielle v. Allegro Resorts Hotels,* 210 F. Supp. 2d 62, 66 (D. R.I. 2002) ("fraudulent joinder is a judicially-created doctrine which applies to two situations; (1) there has been an outright fraud in the plaintiff's recitation of jurisdictional facts; or (2) there is no possibility that the plaintiff

would be able to establish a cause of action against the non-diverse defendants in state court.") (Citation omitted.)

In fact, there is a recent case decided by this Court which is directly on point with the present case. In the case of *Lawrence Builders, Inc. v. Kolodner*, 414 F. Supp. 2d 134 (D. R.I. 2006), Kolodner entered into a contract in which Lawrence Builders agreed to build Kolodner a home. After a dispute arose, Lawrence Builders filed suit in state court against Kolodner and her husband, and added the architect and engineer as co-defendants. As in this case, Lawrence Builders included a count requesting declaratory relief under R.I. Gen. Laws § 9-30-1 *et seq*. Kolodner filed suit later the same day in this Court against Lawrence Builders and its president.

Lawrence Builders was a Rhode Island citizen, while Kolodner and her husband were Massachusetts citizens and the architect and engineer were both Rhode Island citizens. Kolodner and her husband removed the action, alleging fraudulent joinder of the architect and engineer to defeat diversity jurisdiction and Lawrence Builders moved to remand. In deciding the matter, the Court considered Lawrence Builders complaint at the time of removal and also affidavits and testimony of Lawrence's attorney.[3]

After noting the precedent detailed above from the First Circuit, the Court found:

> "whether or not Plaintiff is actually or potentially entitled to relief against the non-diverse defendants, he states no cause of action against either (architect or engineer) in his Complaint, nor does he request any relief from either of them. (The architect and engineer) are named only in Count I of the Complaint which seeks a declaratory judgment the effect of which does not implicate the rights of either (the architect or engineer)." *Lawrence* at 137.

[3] Lawrence's attorney, Mark Russo of Ferrucci & Russo, is one of the attorneys named as one of the Roscitis' attorneys in the present action. The Court in *Lawrence* specifically noted that Mr. Russo testified that he had told the architect after the suit was filed that "there were no monetary claims against him" and "it was the intention of the other side to go to Federal Court, and if it did take place I did used (*sic*) the words it would be a circus." *Lawrence* at 136.

The Court goes on to note that the only allegations mentioning the architect and engineer are those indicating that they were hired to develop plans for the home. No relief was sought against either defendant by plaintiff.

Under these facts, the Court held that the architect and engineer were "fraudulently joined in order to defeat federal jurisdiction." *Lawrence* at 138. Consequently, the Court denied plaintiff's motion for remand.

The procedural facts concerning diversity of this case are remarkably similar to those in the Lawrence case. Here, as in *Lawrence*, Hanover filed suit in this Court, against the Roscitis, Henry Rosciti and AHR, as indemnitors, specifically claiming indemnity under the Indemnity Agreement. The Roscitis, through their attorneys, then filed suit in Providence Superior Court. As part of this action, the Roscitis seek in Count I declaratory relief under R.I. Gen. Laws 9-30-1 *et seq*., and in subsequent Counts, allege various contract and tort claims against Hanover. The Roscitis, as in the *Lawrence* case, supra, also name additional defendants in South Shore, Henry Rosciti and AHR. Other than to mention in the Complaint that South Shore, Henry Rosciti and AHR had entered into the Indemnity Agreement, along with them, in favor of Hanover (Rosciti Complaint, ¶ 10), the Roscitis allege no other facts and, specifically, allege no breach of contract, tort action or any other cause of action against any of these defendants. All allegations and causes of action are directed solely against Hanover. In fact, in consecutive paragraphs, the Roscitis specifically allege that South Shore, Henry Rosciti and AHR are "nominal defendants." (Rosciti Complaint ¶¶ 4-6)[4]

[4] Roscitis' Motion for Remand notes that Hanover is merely "parroting" the Rosciti Complaint. As noted above, the remand motion requires analysis of the complaint at the time of removal. (Rosciti Memorandum at page 6.)

Although South Shore alleges in its motion to remand that Count I of the Rosciti Complaint seeks declaratory relief "as to all" parties (South Shore Memorandum at pages 2 & 6), to the contrary, South Shore, Henry Rosciti and AHR are not even mentioned in Count I. All allegations seek a determination that Hanover was responsible for various breaches and torts.

As the court in *Lawrence* makes clear:

> "The fact that the two non-diverse Defendants were named pursuant to the Uniform Declaratory Judgments Act, R.I. Gen. Laws § 9-30-1 et seq. does not relieve Plaintiff of the obligation to allege sufficient facts supporting the claim that they have a legal interest in the proceeding … The utter dearth of factual allegations concerning either of the non-diverse defendants within the four corners of the Complaint belies (plaintiff's) assertion that it has stated a claim as regards to (the non-diverse defendants). There is no implication of the rights or interests of (the non-diverse defendants) in (plaintiff's) complaint. Therefore, the joinder of the non-diverse parties does not have a reasonable basis in law or fact." *Lawrence* at 138.

South Shore argues in its Memorandum in support of its Motion to Remand that its Answer filed in response to the Rosciti Complaint clearly alleges that, to the extent that the Roscitis are pursuing a derivative action on behalf of South Shore, South Shore may claim ownership to those claims against Hanover. South Shore alleges that this gives South Shore an interest in these proceedings.

First of all, the pleadings they point to, namely, South Shore's Answer to the Rosciti Complaint, was filed September 6, 2006, which was subsequent to the removal of the Rosciti Action. As the rule uniformly applied by the Courts, referenced above, is that the Court will only consider pleadings on file when the removal is effected, this Court should not consider South Shore's Answer when considering these Motions to Remand.

Secondly, the Roscitis clearly make claim on their own behalf against Hanover in order to defeat or reduce their own indemnity obligations. There is no reference in the Rosciti

Complaint whatsoever that they are making claim on behalf of South Shore. In addition, as an indemnitors, the Roscitis are personally obligated to Hanover for all of its loss as a result of having written bonds on behalf of South Shore. As such, these are claims the Roscitis are making on their own personal behalf. In fact, in the Roscitis' Memorandum, at pages 5-6, the Roscitis state: "The Court should take notice that because South Shore is in a pending receivership proceeding, the Roscitis could take no legal action on its behalf…" If the claims are made directly on behalf of the shareholder and not the corporation (Anthony, Jr. is a shareholder of South Shore and his wife Shannon is not), then this is not a derivative claim. *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 27 (D. Mass. 1996).

For all of these reasons, but especially in light of the holding in the *Lawrence* case, cited above, and the fact that this case and *Lawrence* case are nearly identical in their procedural facts, both of the Motions for Remand should be denied on the basis that the non-diverse defendants were fraudulently joined to this action.

**NOMINAL PARTIES**

It is also uniformly held that nominal, non-diverse defendants will not be taken into consideration for diversity purposes. *Navarro Savings Assn. v. Lee*, 446 U.S. 458, 461 (1980) ("a federal court may disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); *Oliveras v. Pittsburgh Corning Corp.*, 36 F. Supp. 2d 443, 444 (D. P.R. 1999) (although co-defendant opposed the removal, the Court held that this party was nominal as there was "no reasonable basis for predicting that it will be held liable"); *Norman v. Cuomo*, 796 F. Supp. 654, 658 (D. N.D.N.Y. 1992) ("Courts uniformly recognize that defendants seeking to remove a case to Federal Court need not obtain the consent of defendants who are nominal").

In the case of *Marsden v. So. Flight Services, Inc.*, 192 F. Supp. 418 (D. M.D.N.C. 1961), the plaintiff instituted an action under the North Carolina Declaratory Judgments Act (with similar in wording to Rhode Island's), but sought no relief against the resident defendant. The Court found the resident defendant was not an indispensable party to the action, but nominal or informal. The Court's decision hinged on the fact that no relief was sought against the resident defendant. Further, as the Court stated: "The fact that the resident defendant may hereafter assert some interest in the property is immaterial … Allegations that might have been made, or relief that might have been sought, are not to be considered." *Marsden* 192 F. Supp. at 421.

As the Court was restricted to analyzing the complaint and relief sought therein, and no other pleadings filed subsequent to the removal, in deciding the remand motion, the remand was denied.

Similarly, the Rosciti Complaint requests declaratory relief, but seeks no relief therein from any of the resident defendants. This declaratory relief count, as with all of the other counts in the Complaint, only seek relief against Hanover. Thus, these resident defendants are not indispensable parties to this action.[5]

Even if one assumes the Roscitis assert some type of derivative claim against Hanover, or that South Shore may assert some type of claim on its own behalf in the future, the mere

[5] In addition, the case law under Federal Rule of Civil Procedure 19 uniformly holds that a joint obligor, as South Shore is under the Indemnity Agreement, is neither a necessary party nor an indispensable party in an action regarding determination of indemnity rights. The surety is free to sue one or all the indemnitors on their obligations, and they may defend, with no prejudice resulting to any joint obligor not joined in the action. See, for example, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 184 F. Supp. 2d 55 (D. Mass. 2001) and Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (3rd Cir. 1993). This Court apparently agrees with this analysis, as U. S. Magistrate Judge, Lincoln D. Almond, filed a Report and Recommendation on October 13, 2006 that Rocitis' Motion to Dismiss in the Hanover Action, based on the claim that South Shore is an indispensable party, be denied. The Magistrate specifically finds that South Shore is neither a necessary nor indispensable party in the Hanover Action.

possibility that this may happen cannot be considered by the Court. The Court is confined to considering the Complaint of the Roscitis only because that was the only pleading filed when the removal was effected.

The Roscitis' claim in its Memorandum in support of their Motion to Remand (Rosciti Memorandum, page 6) that nominal parties are restricted to a "depository or stakeholder" is plainly not supported by the case law cited above. The real test is whether there are any claims asserted against the allegedly nominal party.

In this case, not only are no claims asserted against these resident defendants, the Roscitis specifically refer to them as "nominal parties" in their own Complaint. As such, the resident defendants of South Shore, Henry Rosciti and AHR are nominal parties to the Rosciti Action and their citizenship should not be considered by this Court in deciding this diversity case. For these reasons, the Motions of South Shore and the Roscitis for Remand should be denied.

**REALIGNMENT**

In the leading case on realignment, the United States Supreme Court directed that the District Courts must not rely on the parties' determination of who is a plaintiff and who is a defendant. The District Courts have a duty to "look beyond the pleadings and arrange the parties according to their sides in the dispute". (Citations omitted). *Indianapolis v. Chase Nat's. Bank*, 314 U.S. 63, 69 (1941). In this case, the court stated: "Whether the 'collision of interest' exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principle purpose of the suit,' and the 'primary and controlling matter in dispute'." (Citations omitted). *Indianapolis* at 69.

These principles have been applied consistently in the First Circuit to preserve diversity jurisdiction in the removal context. In *Littlefield v. Acadia Ins. Co.*, 392 F.3d 1 (1st Circuit 2004), the insured/tortfeasor filed suit against his liability insurer for determination of coverage

and included the victim's widow, with her consent, as a defendant. As the insured and the widow were citizens of the same state, the widow's inclusion would defeat diversity. The court held "as (the widow's) interest in this case and the relief she seeks are identical to the (insured/tortfeasor's), she should have been realigned as a plaintiff, and we align her." *Littlefield*, 392 F.3d at 3, footnote 2.

In *Schouman v. Schouman*, 1996 U.S. Dist. LEXIS 20043 (D. Mass. 1996), a sister sued her brother and a trustee, who had a claim of ownership in the brother's undivided interest in a Cape Cod property the brother held jointly with the sister. The trustee removed the action and the sister sought a remand as she and her brother were citizens of the forum state and the trustee was not. The court found "where one defendant's interest are adverse to that of the other, and are in fact more closely aligned with that of the plaintiff, the court will not allow artful pleading to defeat the removal of jurisdiction granted by Congress." *Schouman* at 11, 12. Even though the resident-defendant brother was a necessary party to the suit, the court realigned this defendant to one of plaintiff, thus preserving diversity.

In this case, plaintiff Roscitis and defendant South Shore, Henry Rosciti and AHR, during all relevant times in this matter, were closely related to each other. Anthony, Jr. and Shannon Rosciti are husband and wife, Henry Rosciti is Anthony Jr.'s cousin. In addition, Anthony Jr. and Henry are each fifty (50) percent shareholders of South Shore. Anthony and Henry also controlled AHR (stands for "Anthony Henry Rosciti"). In essence, this group together can be considered a family of individuals and companies.

When South Shore wanted to obtain bonds from Hanover for public construction projects, Hanover required that the entire family jointly and severally agreed to indemnify Hanover from loss occasioned by its having written bonds on behalf of South Shore.

Hanover expects its loss will exceed $2 million on the bonds written for South Shore. When this family of indemnitors refused to indemnify Hanover by providing collateral against loss, Hanover filed suit against the Roscitis, Henry Rosciti and AHR before this Court in the Hanover Action. Instead of filing its compulsory counterclaims to that action, the Roscitis filed this action in state court.

The Roscitis' claims against Hanover are essentially defenses to offset Hanover's large claim of indemnity. The claims asserted in the Rosciti Complaint all relate to Hanover's alleged actions in dealing with claims under the bonds Hanover wrote on behalf of South Shore. As such, since these claims, if successful, will have the effect of reducing the joint indemnity obligations of all defendants, as well as the Roscitis, the interests of this family of indemnitors are completely harmonized. Rather than a "collision of interests" between the parties, the situation here can be better described as a "caravan of joint interests" in which all of the indemnitors are on the same road traveling in the same direction.

Accordingly, Hanover respectfully requests that this Court, should it find that the non-diverse defendants are neither fraudulently joined nor are nominal defendants, realign the non-diverse defendants as joint plaintiffs with the Roscitis.

**STATE LAW QUESTION**

The Roscitis argue in their Memorandum (Rosciti Memorandum, pages 7-8) that, as the receivership statute in Rhode Island relates by definition to state law questions, this Court should remand this case to state court. They point to 28 U.S.C. §1441(c) as its basis for this request.

Section 1441(c) refers to 28 U.S.C. §1331 which, in turn, relates to questions arising out of the laws of the United States, or federal law questions. As one commentator explains, after the 1990 amendment to the statute, "the diversity case may no longer invoke removal under subdivision (c); only the federal question claim – a claim arising under federal law – will support

a subdivision (c) removal. That is what the statute means with its reference to Section 1331." *United States Code Annotated, Title 28, Judiciary and Judicial Procedure*, §§1405 to 1441 (2006 Ed., pg. 392).

The Rosciti Action does not include any questions of federal law and jurisdiction is not asserted on any federal law question basis. Accordingly, it appears § 1441(c) is not applicable to the issues of this diversity jurisdiction case.

In addition, the Receiver, by these receivership statutes, has the authority, "subject to court order, to sue and defend in all courts" in carrying out the liquidation. Accordingly, there is no claim of exclusive jurisdiction in the receivership statutes. Quite the contrary, there is an express acknowledgement that the receiver will need to go into other courts in completing the liquidation. R.I. Gen. Laws § 7-1.2-1316. Therefore, Roscitis' claim that this action should be remanded because the receivership action's jurisdiction to all receivership matters is exclusive misses the mark. The receiver's involvement in this matter before the federal court neither conflicts with the receivership statute, nor with his discharge of his duties.

**CONCLUSION**

Plaintiff Roscitis filed suit against Hanover in state court, rather than assert their compulsory counterclaims to the Hanover Action which was previously filed in this Court against the Roscitis and other indemnitors. In its state court action, the Roscitis included co-indemnitors South Shore, Anthony Rosciti and AHR as co-defendants, but asserted no cause of action and sought no relief against any one of them. Accordingly, these resident defendants were fraudulently joined and/or are nominal parties to this action. As such, the citizenship of these resident defendants should not be considered by this Court when deciding this diversity question. When the citizenship of these resident defendants are not considered, there is diversity of

citizenship between plaintiff Roscitis, as Rhode Island citizens, and defendant Hanover Insurance Company, as citizen of Massachusetts and Delaware.

Alternatively, Hanover requests that this Court realign the parties to correspond with their real interests in this controversy. As the Roscitis, Henry Rositti, AHR and South Shore constitute a family of co-indemnitors, their interests are completely in harmony. The Roscitis' claims in this action against Hanover are all directed at reducing this joint indemnity obligation shared by all of the indemnitors. Accordingly, these resident defendants should all be joined as plaintiffs with the Roscitis. After realignment, there is complete diversity between all plaintiffs, as Rhode Island citizens, and defendant Hanover as citizen of Delaware and Massachusetts.

Accordingly, the Motions for Remand by South Shore and Roscitis should be denied. Both the Roscitis and South Shore claim attorney fees against Hanover pursuant to 28 U.S.C. §1447(c). Pursuant to the decision of the U.S. Supreme Court in *Martin v. Franklin Capital Corp*., 126 S. Ct. 704 (2005), the removal action by Hanover had an "objectively reasonable basis." Thus, even if this Court were to grant either Motion for Remand, an award of attorney fees to either party is not warranted under these facts.

For all of the above reasons, Hanover respectfully requests that this Court deny the Motions of both South Shore and the Roscitis for Remand, and award Hanover such other relief as this Court deems fair, just and reasonable.

Respectfully submitted,

THE HANOVER INSURANCE GROUP

By its attorneys,

__*/s/ Kevin C. Cain*___
Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
[617] 951.2100

**CERTIFICATION OF SERVICE**

I hereby certify that on this 16th day of October, 2006, the foregoing was filed electronically and is available for viewing and downloading from the ECF system.

A copy has also been served upon Jonathan Savage of Shechtman, Halperin, Savage, LLP, Christopher Mulhearn, Ferrucci & Russo, P.C.; and Joseph DeAngelis, Tillinghast Licht, LLP., by first-class, postage pre-paid mail on the same date.

__*/s/ Kevin C. Cain*___
Kevin C. Cain

PABOS2:RRITLAN:647503_1
2114-91630