UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| ANTHONY F. ROSCITI, JR.; and SHANNON B. ROSCITI Plaintiffs v. THE HANOVER INSURANCE GROUP; Defendants | CIVIL ACTION NO. 1:06-cv-00392-T |

ANSWER AND COUNTERCLAIM OF DEFENDANT THE HANOVER INSURANCE GROUP

**ANSWER**

Defendant, the Hanover Insurance Group ("Defendant Hanover") by and through counsel, hereby provides its answer to the allegations set forth in plaintiffs', Anthony F. Rosciti, Jr. and Shannon B. Rosciti ("Plaintiff Roscitis") Complaint in the above entitled matter.

1. On information and belief, admitted.

2. On information and belief, admitted.

3. Admitted.

4. By order of Court dated January 4, 2007, this defendant has been dismissed from this action.

5. By order of Court dated January 4, 2007, this defendant has been dismissed from this action.

6. By order of Court dated January 4, 2007, this defendant has been dismissed from this action.

7. This action has been removed from State Court to U.S. District Court.

8. Defendant Hanover admits that it supplied performance and payment bonds on behalf of South Shore Utility Contractors, Inc. on the named project. Otherwise, the bonds speak for themselves and Defendant Hanover denies all other allegations of this paragraph.

9. Defendant Hanover admits that it supplied performance and payment bonds on behalf of South Shore Utility Contractors, Inc. on the named project. Otherwise, the bonds speak for themselves and Defendant Hanover denies all other allegations of this paragraph.

10. Defendant Hanover admits that the Plaintiffs executed the Agreement of Indemnity ("Agreement") in favor of Defendant Hanover in May of 2005 and, otherwise, denies the allegations of this paragraph.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Defendant Hanover hereby realleges and incorporates by reference its answers to Paragraphs 1-19 of the Complaint as if the same were stated more fully herein.

21. This paragraph does not state any factual allegations, but only an opinion of Plaintiff Roscitis, to which no response can be given. To the extent it states facts, such facts are denied.

22. This paragraph does not state any factual allegations, but only an opinion of Plaintiff Roscitis, to which no response can be given. To the extent it states facts, such facts are denied.

23. Defendant Hanover hereby realleges and incorporates by reference its answers to Paragraphs 1-22 of the Complaint as if same were stated more fully herein.

24. This paragraph states a legal conclusion requiring no response. To the extent this paragraph alleges facts, such facts are denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Defendant Hanover hereby realleges and incorporates by reference its answers to Paragraphs 1-28 of the Complaint as if same were stated more fully herein.

30. This paragraph does not state any factual obligations, but only an opinion of Plaintiff Roscitis, to which no response can be given. To the extent it states facts, the facts are denied.

31. Denied.

32. This paragraph does not state any factual allegations, but only an opinion of Plaintiff Roscitis, to which no response can be given. To the extent it states facts, such facts are denied.

33. Denied.

34. Defendant Hanover hereby realleges and incorporates by reference its answers to Paragraphs 1-33 of the Complaint as if same were stated more fully herein.

35. Defendant Hanover is without sufficient knowledge concerning the allegations of this paragraph and, as such, denies same.

36. Denied.

37. Defendant Hanover denies any such interference.

38. Denied.

39. Defendant Hanover hereby realleges and incorporates by reference its answers to Paragraphs 1-38 of the Complaint as if same were stated more fully herein.

40. This paragraph states a legal conclusion, requiring no response. To the extent this paragraph alleges facts, such facts are denied.

41. This paragraph states a legal conclusion, requiring no response. To the extent this paragraph alleges facts, such facts are denied.

42. This paragraph states a legal conclusion, requiring no response. To the extent this paragraph alleges facts, such facts are denied.

43. Defendant Hanover denies any breach of good faith and fair dealing.

44. Denied.

45. Defendant Hanover hereby realleges and incorporates by reference its answers to Paragraphs 1-44 of the Complaint as if same were stated more fully herein.

46. This paragraph states a legal conclusion requiring no response. To the extent this paragraph alleges facts, such facts are denied.

47. This paragraph states a legal conclusion, requiring no response. To the extent this paragraph alleges facts, such facts are denied.

48. Denied.

49. Defendant Hanover hereby realleges and incorporates by reference its answers to Paragraphs 1-48 of the Complaint as if same were stated more fully herein.

50. Defendant Hanover is without sufficient knowledge concerning the allegations in this paragraph and, as such, denies same.

51. This paragraph states a legal conclusion, requiring no response. To the extent this paragraph alleges facts, such facts are denied.

52. Denied.

53. Defendant Hanover denies it undertook any deceptive act or practices under the named statute or otherwise.

54. Defendant Hanover denies it undertook any deceptive act or practices under the named statute or otherwise.

**AFFIRMATIVE DEFENSES**

FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

The Complaint is barred by reason of waiver.

THIRD AFFIRMATIVE DEFENSE

The Complaint is barred by reason of estoppel.

FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred by reason of laches.

FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred by reason of unclean hands.

SIXTH AFFIRMATIVE DEFENSE

Plaintiff Roscitis may not maintain this action as they have breached the Agreement.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff Roscitis are barred by their own conduct in knowingly asserting claims that are either barred or not allowed by relevant statutes or common law.

EIGHTH AFFIRMATIVE DEFENSE

Plaintiff Roscitis have not performed all conditions precedent to the maintenance of this action.

NINTH AFFIRMATIVE DEFENSE

Plaintiff Roscitis have not complied with and/or are without standing to assert claims under M.G.L.A. 93A.

TENTH AFFIRMATIVE DEFENSE

Plaintiff Roscitis are barred from asserting claims in bad faith because of their own bad faith.

WHEREFORE, Defendant Hanover prays that the Complaint be dismissed and that Defendant Hanover be awarded its costs, attorney fees and such other legal or equitable relief as this Court deems necessary and proper.

**COUNTERCLAIM**

Plaintiff-in-Counterclaim, the Hanover Insurance Group, hereby sets forth its counterclaim as follows:

**PARTIES**

1. The Hanover Insurance Group ("Plaintiff-in-Counterclaim") is a Delaware corporation with its principal place of business at 440 Lincoln Street, Worcester, Massachusetts.

2. Anthony Rosciti, Jr. and Shannon Rosciti ("Defendants-in-Counterclaim") are residents of Lincoln, Rhode Island with residence at 15 Morgan Court, Lincoln, Rhode Island 02865 and are both Rhode Island citizens.

**JURISDICTION AND VENUE**

3. This court has jurisdiction over this cause under 28 U.S. C. §1332(a)(1) in that the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000, and is between citizens of different states.

4. Venue is proper in this court under 28 U.S. C. §1391(a) as a substantial part of the events giving rise to this claim occurred in this judicial district.

**FACTS COMMON TO ALL COUNTS**

5. Plaintiff-in-Counterclaim is in the business of providing surety bonds to contractors and other companies.

6. Plaintiff-in-Counterclaim provided surety bonds to South Shore Utility Contractors, Inc. ("South Shore"), as principal, to various owners and general contractors, and which bonds secured the obligations of South Shore to perform construction work required by the contracts or

subcontracts with these entities and to pay for labor and material required for the completion of these contracts.

7. In consideration of the issuance of the surety bonds by Plaintiff-in-Counterclaim on behalf of South Shore, South Shore and the Defendants-in-Counterclaim, among others, entered into an Agreement of Indemnity in favor of Plaintiff-in-Counterclaim. A true and accurate copy of the Agreement of Indemnity is attached as Exhibit A.

8. Pursuant to Section 2 of the Agreement of Indemnity, the Defendants-in-Counterclaim agreed to:

> "Exonerate, indemnify and save harmless the Surety (Plaintiff-in-Counterclaim) from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees… by having executed or procured the execution of the bonds…"

9. Plaintiff-in-Counterclaim has received various performance and payment bond claims relating to the various bonds relating to Plaintiff-in-Counterclaim on behalf of South Shore and lawsuits have been initiated against Plaintiff-in-Counterclaim relating to certain payment bond claims as a result of South Shore's failure to pay its subcontractors, suppliers and material men on various projects. In addition, claims have been asserted against performance bonds issued by Plaintiff-in-Counterclaim.

10. By letter dated March 17, 2006, Plaintiff-in-Counterclaim notified South Shore and the Defendants-in-Counterclaim, as indemnitors under the Agreement of Indemnity, of the claims submitted to Plaintiff-in-Counterclaim totaling $1.3 million and requested that the indemnitors; (a) indemnify and hold Plaintiff-in-Counterclaim harmless from the pending claims and (b) post collateral on the claims, all in accordance with the terms of the Agreement of

Indemnity. Indemnitors have not indemnified Plaintiff-in-Counterclaim nor posted any collateral. A true and accurate copy of the March 17, 2006 letter is attached as Exhibit B.

11. On April 24, 2006, pursuant to its rights under paragraph 10 of the Agreement of Indemnity, Plaintiff-in-Counterclaim filed the Agreement of Indemnity as a UCC1 filing against South Shore and the Defendants-in-Counterclaim with the Rhode Island Corporations Division. A true and accurate copy of the file stamped UCC1 Financing Statement and Acknowledgement of Receipt by the Rhode Island Corporations Division are attached collectively as Exhibit C.

12. As an acknowledgement of their collective obligations under the Agreement of Indemnity, South Shore and Defendants-in-Counterclaim executed on April 13, 2006 an Acknowledgement of Voluntary Default and addressed to Plaintiff-in-Counterclaim. A true and accurate copy of the Acknowledgement of Default dated April 13, 2006 is attached as Exhibit D. Among other things, Defendants-in-Counterclaim acknowledge their default under the Agreement of Indemnity.

13. On or about May 12, 2006, Defendant Anthony Rosciti, Jr. brought a receivership action against South Shore in Rhode Island Superior Court. On that same date, the Rhode Island Superior Court entered an order appointing temporary receiver and staying certain proceedings against South Shore. A true and accurate copy of the order appointing temporary receiver is attached as Exhibit E.

**COUNT I**
**(BREACH OF CONTRACT)**

14. Plaintiff-in-Counterclaim adopts and realleges paragraphs 1-17 as and for paragraphs 1-17 of Count I as though fully set forth herein.

15. Pursuant to the Agreement of Indemnity, the Defendants-in-Counterclaim are obligated to indemnify Plaintiff-in-Counterclaim from all losses, costs, damages, attorney fees, disbursements and expenses of every nature and kind and propose collateral to cover Plaintiff-in-Counterclaim's contingent bond exposure and future expenses. See, Exhibit A, paragraphs 2,3.

16. Despite Plaintiff-in-Counterclaim's demands, the Defendants-in-Counterclaim have breached the Agreement between the parties by failing and refusing to indemnify and hold Plaintiff-in-Counterclaim harmless from all claims and to post collateral in the amount of Plaintiff-in-Counterclaim's bond exposure.

17. Defendants-in-Counterclaim have acknowledged that they are in default of the Agreement of Indemnity. See, Exhibit D.

18. Plaintiff-in-Counterclaim has been damaged by the Defendants-in-Counterclaim material breach of the Agreement of Indemnity.

WHEREFORE, Plaintiff-in-Counterclaim prays the Court to enter an order of judgment against Defendants-in-Counterclaim, jointly and severally, to the extent of its damages, plus costs and expenses and require them to post collateral in an amount sufficient to secure Plaintiff-in-Counterclaim from any future loss; and for such further relief as the Court deems just an appropriate.

**COUNT II**
**(SPECIFIC PERFORMANCE)**

19. Plaintiff-in-Counterclaim adopts and realleges paragraphs 1-17.

20. By letter of March 17, 2006, Plaintiff-in-Counterclaim has demanded that Defendants-in-Counterclaim indemnify and hold Plaintiff-in-Counterclaim harmless from any

and all loss and costs resulting from the bonds it issued. Defendants-in-Counterclaim have failed or refused to so indemnify Plaintiff-in-Counterclaim.

21. Plaintiff-in-Counterclaim has demanded that the Defendants-in-Counterclaim post collateral in the initial amount of $1.3 million or in an amount sufficient to secure Plaintiff-in-Counterclaim from any loss and cost resulting from the bonds it issued. Indemnitors have failed or refused to so post collateral with Plaintiff-in-Counterclaim.

22. Plaintiff-in-Counterclaim lacks and adequate remedy at law and will suffer irreparable harm if the relief sought is not granted.

WHEREFORE, Plaintiff-in-Counterclaim prays the Court to enter an order against Defendants-in-Counterclaim, jointly and severally, requiring them to post collateral in the amount of $1.3 million or in an amount sufficient to secure Plaintiff-in-Counterclaim from any losses; and for such further relief as the Court deems just and appropriate.

**COUNT III**
**(DECLARATORY JUDGMENT)**

23. Plaintiff-in-Counterclaim adopts and realleges paragraphs 1-17 as and for paragraphs 1-17 of Count III as though fully set forth herein.

24. 28 U.S. 2201 provides that the Court may make binding declarations of rights in cases of actual controversy.

25. The instant cause involves an actual controversy regarding the obligations of the Defendants-in-Counterclaim under the Agreement of Indemnity and it is thus appropriate that this Court issue a declaratory judgment regarding the parties' respective rights and obligations under the Agreement of Indemnity because a binding declaration of this Court as to each parties'

rights and obligations under this Agreement would serve to terminate any question of who is obligated to indemnify Plaintiff-in-Counterclaim.

WHEREFORE, Plaintiff-in-Counterclaim respectfully requests that Court grant the following relief;

A. That the Court issue an order declaring that Defendants-in-Counterclaim, jointly and severally, are liable to Plaintiff-in-Counterclaim under the agreement of indemnity of all losses, expense, cost, etc. that Plaintiff-in-Counterclaim incurs as a result of the bonds it issued on behalf of South Shore;

B. That the Court issue an order declaring that pursuant to the terms of Agreement of Indemnity, Plaintiff-in-Counterclaim has the following rights:

1. Defendants-in-Counterclaim are obligated to post collateral to secure Plaintiff-in-Counterclaim's contingent bond exposure and future expenses;

2. Plaintiff-in-Counterclaim has the exclusive right to adjust, settle, compromise any claim, demand, suit or any other proceeding arising out of any bond against Plaintiff-in-Counterclaim and/or the indemnitors and that Plaintiff-in-Counterclaim has the right to take any action it deems appropriate in response thereto and its determination of whether to defend or settle the same shall be binding and conclusive on Defendants-in-Counterclaim. Vouchers and other evidence of payment by Plaintiff-in-Counterclaim shall be conclusive of the fact and amount such liability and of the Defendants-in-Counterclaim liability to Plaintiff-in-Counterclaim (see Exhibit A, paragraph 3).

C. That the Court order that the Defendants-in-Counterclaim have waived, to the extent permitted by law so far as their respective obligations under the Agreement of Indemnity are concerned, all rights to claim any property including their respective homesteads as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession of the United States (see Exhibit A, paragraph 13).

Respectfully submitted,

THE HANOVER INSURANCE GROUP

By its attorneys,

__*/s/ Kevin C. Cain*___
Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
[617] 951.2100

**CERTIFICATE OF SERVICE**

I hereby certify that on this ____day of January, 2007, the foregoing was filed electronically and is available for viewing and downloading from the ECF system.

A copy has also been served upon Christopher Mulhearn, Ferrucci & Russo, P.C.; by first-class, postage pre-paid mail on the same date.

__*/s/ Kevin C. Cain*___
Kevin C. Cain

PABOS2:RRITLAN:653085_1
2114-91630