UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION<br>Defendants | CIVIL ACTION NO. 1:06-cv-00276-T-LDA |

**HANOVER'S MOTION TO COMPEL DEFENDANTS HENRY V. ROSCITI AND AHR UTILITY CORPORATION TO PROVIDE MORE COMPLETE ANSWERS TO INTERROGATORIES AND MOTION TO DETERMINE SUFFICIENCY OF THEIR RESPONSES TO REQUESTS FOR ADMISSION**

**INTRODUCTION**

Pursuant to Rules 33 and 36, Fed. R. Civ. P., plaintiff, Hanover Insurance Company ("Hanover"), duly served Requests for Admission and Interrogatories on defendants Henry V. Rosciti, Jr. ("Rosciti") and AHR Utility Corporation ("AHR") on December 11, 2007. A true and accurate copy of the Requests for Admission and Interrogatories is attached to this Motion as Exhibit A. Rosciti and AHR responded on January 10, 2007. A true and accurate copy of the responses of Rosciti and AHR is attached to this Motion as Exhibit B. After Hanover objected to the responses by letter dated January 23, 2007 (Exhibit C), Rosciti and AHR filed supplementary responses on February 7, 2007. A true and accurate copy of the supplementary responses are attached to this Motion as Exhibit D. Hanover again objected to certain of the responses by email and the attorney for Rosciti and AHR responded by email (collectively, as Exhibit E).

As Hanover continues to object to responses of Rosciti and AHR to certain of the Requests for Admissions and Answers to Interrogatories as evasive, incomplete, non-responsive, insufficient and not in compliance with the applicable rules, Hanover brings this Motion to compel under Rule 37, Fed. R. Civ. P., and Motion to determine sufficiency of responses under Rule 36, Fed. R. Civ. P. Hanover also requests its attorney fees and expenses for bringing this Motion under Rule 37(a)(5), Fed. R. Civ. P.

Specifically, Hanover objects to the responses to Requests for Admission 5, 6, 7, and 8 and the accompanying Answers to Interrogatories. In addition, Hanover objects to Answers to Interrogatories 9 – 17, inclusive. Hanover respectfully requests an order from this Court that Requests for Admission 5, 6, 7 and 8 are admitted, or, alternatively, Rosciti and AHR are required to amend the Requests for Admission to admit or deny same. Further, Hanover requests an order that Rosciti and AHR amend or supplement Answers to Interrogatories 5 – 17.

## FACTS

Hanover, as surety, wrote payment and performance bonds on behalf of South Shore Utility Corporation, Inc. ("South Shore") on two projects in Rhode Island, commonly known as Freight Rail Improvements, for the owner/obligee, Amtrak ("Amtrak Project") and the Pawtucket Water Treatment Project for general contractor/obligee, Earth Tech, Inc. ("Pawtucket Project"). Bonds on the Pawtucket Project were executed in May of 2005 and on the Amtrak Project in June of 2005.

As partial consideration to Hanover agreeing to write bonds on behalf of South Shore, the individual Indemnitors, including the Rosciti and AHR, executed an Agreement of Indemnity in Hanover's favor in May of 2005. A true and accurate copy of the Indemnity Agreement is attached to Hanover's complaint as Exhibit A. Among other things, the Indemnity Agreement

obligates the Indemnitors to indemnify and hold harmless Hanover from and against any and all loss, costs, attorneys' fees, etc., associated with its execution of bonds on behalf of South Shore. This indemnity obligation included an obligation to post collateral to be held by Hanover as soon as claims were asserted under the bonds and in amounts satisfactory to Hanover. In addition, the Indemnity Agreement provides an assignment of all contract funds on bonded projects, and otherwise, to Hanover upon default of any or all Indemnitors of any of the obligations in the Indemnity Agreement.

Hanover was sued in Rhode Island State Court on a payment bond claim in November of 2005 by a subcontractor of South Shore, G. Donaldson, in the amount of $536,000 plus interest and attorneys' fees. In addition, a supplier of South Shore on the Pawtucket Project, Vellano Brothers, Inc., filed a notice of claim in the amount of $755,000 with Hanover on or about March 3, 2006.

Pursuant to the terms of the Indemnity Agreement, Hanover demanded, by letter dated March 17, 2006, collateral from the Indemnitors in the amount $1.3 million. A true and accurate copy of this March 17, 2006 letter is attached to the complaint of Hanover in the above matter as Exhibit B. The Indemnitors failed to post collateral on behalf of Hanover as demanded.

By letter of March 21, 2006, pursuant to its rights under Indemnity Agreement, Hanover sent letters to Amtrak and Earth Tech requesting that each not release contract funds to South Shore without Hanover's prior written consent. Further, by letters dated April 13, 2006, South Shore wrote to Amtrak and Earth Tech acknowledging its default under the associated contracts due to financial difficulties, voluntarily terminated its contact rights with each and directed each to pay all remaining contract funds to Hanover or at its direction. In addition, by letters dated April 13, 2006, the Indemnitors, including the Rosciti and AHR, wrote Hanover to acknowledge

their default under the Indemnity Agreement. A true and accurate copy of this April 13, 2006 letter is attached to Hanover's complaint as Exhibit C.

Hanover then arranged with Amtrak and Earth Tech to have replacement contractors complete the bonded work and negotiated settlements with each on their performance bond claims. In addition, Hanover settled valid claims of material suppliers and subcontractors of South Shore on both projects, including paying G. Donaldson a total of $520,000 and Vellano Brothers a total of $681,000, respectively, to settle their claims on the Pawtucket Project. Hanover has losses to date under the bonds written on the Pawtucket Project totaling approximately $1.8 million.

Hanover filed suit to enforce its rights under the Indemnity Agreement in June of 2006 in this Court ("Indemnity Action"). The Rosciti and AHR filed an Answer, alleging certain Affirmative Defenses.

**ARGUMENT**

Fed. R. Civ. P. 36 provides:

> "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of matters within the scope of Rule 26(b)(1) relating to:
>
> > (A) facts, the application of law to fact, or opinion about either; and
> >
> > (B) the genuineness of any described documents."

Under Rule 36(a)(4):

> " … The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

Under Rule 36(a)(6):

> "The requesting party may move to determine the sufficiency of an answer or objection. … On finding that an answer does not comply with this rule, a court may order either that the matter is admitted or that an amended answer be served…"

Under Fed. R. Civ. P. 37(a), a party may make a Motion to compel discovery and, under Rule 37(a)(4), evasive or incomplete responses will be treated as a failure to respond. If a Motion to compel is granted, the moving party is entitled to its reasonable expenses in making the Motion, pursuant to the requirements of Rule 37(a)(5).

The courts have liberally construed Requests for Admission under Fed. R. Civ. P. 36. Kershner v. Beloit Corp., 106 F.R.D. 498, 499 (D. Me. 1985); Duncan v. Santaniello, 1996 U.S. Dist. LEXIS 3860 (D. Mass. 1996).

"Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact (citations omitted) . . . . Such breadth allows litigants to winnow down issues prior to trial and focus their energy and resources on disputed matters." Carney v. IRS, 258 F.3d 415, 419 (5th Cir. 2001).

The courts have also consistently found that Requests for Admission under Fed. R. Civ. P. 36 serve as a valuable tool to judicial economy, saving time and expense, as they narrow issues and eliminate completely issues not in dispute. Barbosa v. Cincinnati Milicron, 1984 U.S. Dist. LEXIS 16923 (D. Mass. 1984) (The function of the procedures codified in Rule 36 F. R. Civ. P., is to ". . . define and limit the matters in controversy between the parties," citing Wright and Miller, Federal Practice and Procedure: Civil §2252)

As such, "parties may not view Requests for Admissions as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." Marchand v. Mercy Med. Ctr., 22 F.3d 933, 936-37(9th Cir. 1994).

As indicated above, Hanover objects to the responses of Rosciti and AHR to Requests for Admission 5, 6, 7 and 8 and the accompanying answers to interrogatories. Hanover also seeks supplement on Answers to Interrogatories 9 – 17.

1. Requests for Admission 5 and 6 are similar in that they request Rosciti and AHR to admit or deny that South Shore made payments to its subcontractor, G. Donaldson, on the Pawtucket Project. Rosciti and AHR inexplicably give very different responses to each request.

Specifically, Request for Admission No. 5 asks Rosciti and AHR to admit or deny that South Shore did not resolve the G. Donaldson claim and law suit by making payments to G. Donaldson as part of a purported settlement agreement and judgment stipulation with G. Donaldson. Rosciti and AHR respond by partially admitting the request, but with a qualification. They aver that $100,000 was paid pursuant to the settlement and stipulation.

Request for Admission No. 6 asks whether South Shore made any payments to G. Donaldson after it received payment from EarthTech for G. Donaldson’s work. Rosciti and AHR deny this request for admission averring, pursuant to the terms of the judgment stipulation noted above, that South Shore made an initial payment of $100,000 to G. Donaldson pursuant to the stipulation.

Rosicit and AHR pursuant to an email from counsel dated February 12, 2008 (Exhibit E) admit that the responses to these two request for admission and the accompanying answers to interrogatories are factually incorrect as it is clear that South Shore made no payments to G. Donaldson pursuant to the settlement and judgment stipulation. However, Rosciti and AHR, despite requests from Hanover, have refused to correct this error on the record and the responses to the Requests for Admission remain as originally stated.

Further, under Request for Admission No. 5, despite Hanover asking only if South Shore made the payment, Rosciti and AHR provide needless qualification of why payment was not made. This was not requested in the Request for Admission and this qualification therefore should be stricken.

Hanover requests that the Court order that these Requests for Admission 5 and 6 be admitted, or, alternatively, that Rosciti and AHR amend responses to the Requests for Admission by admitting or denying same and that the accompanying Answers to Interrogatories be amended.

2. Hanover objects to responses to Requests for Admission 7 and 8. These Requests for Admission relate to a factual inquiry concerning the understanding of the obligations of Rosciti and AHR under the Indemnity Agreement. In their original responses and supplementary responses to these Requests for Admission, Rosciti and AHR object to both Requests for Admission on the following bases:

(a) The requests call for a legal conclusion;

(b) The term "duty" in Request for Admission No. 7, and "default" in Request for Admission No. 8 are legal terms which Rosciti and AHR are unable to understand.

In fact, in their supplemental response to Request for Admission No. 8, Rosciti and AHR changed their response from "deny" to "can neither admit nor deny."

Fed. R. Civ. P. 36(a) specifically permits a Request for Admission relating to an "facts, the application of law to fact, or opinion about either." Further, as the court in Booth Oil v. Safety-Kleen, Corp., 194 F.R.D. 76, 80 (W.D. N.Y. 2000), held, in response to an objection that the Requests for Admission impermissibly requested a contract interpretation, the request "may not be ignored on the ground that the request seeks an interpretation of text or that the document

in question 'speaks for itself.' Documents do not speak, rather, they represent factual information from which legal consequences may follow."

Specifically, this court found:

> "A statement of a party's understanding of the meaning or intent of a document is therefore a statement of fact, and where the question of the meaning of the document is at issue in the case, a request directed to another party seeking an admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement of fact, and is authorized by Rule 36." Id.

Such requests are not objectionable because the issue might be ultimately for judicial determination since: "Rule 36 would cover an admission by [a party] as to what its obligations were as a matter of law, because the text of the rule specifically authorizes request for admission of propositions of law as applied to fact." Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3rd Cir. 1992).

In this case, Requests 7 and 8 relate to Rosciti's and AHR's interpretation of the Indemnity Agreement. Hanover's entire suit is predicated on the enforcement of the Agreement against the Rosciti and AHR as Indemnitors of South Shore. As stated by the Langer and Booth Oil courts, requests related to a party's interpretation of a contract provision are not objectionable as asking for a conclusion of law, but to the contrary relate to a statement of fact. Hanover's request concerning the duty of the Rosciti and AHR under the Indemnity Agreement, and the requests relating to default under the Indemnity Agreement are, at most, no more than requests for an application of law to fact, which are permitted under Rule 36.

Accordingly, the objections to Requests for Admission 7 and 8 on the grounds it seeks a legal conclusion or uses legal terms are likewise invalid.[1]

---

[1] It should be noted here that the Rosciti and AHR understand the concept of "defaulting" under the Indemnity Agreement. By their letter dated April 13, 2006, the Rosciti and AHR, among

Accordingly, Hanover request an order of this Court that Requests for Admission 7 and 8 are admitted, or, alternatively, an order requiring AHR and Rosciti to amend responses to admit or deny same. Further, Hanover requests an order that the Answers to Interrogatories 7 and 8 should be amended.

3. Hanover's Interrogatory No. 9 asked Rosciti and AHR, if the Request for Admission was denied, to set forth in detail facts supporting their claim that Hanover engaged in fraud or collusion with the obligees or owners in resolving the payment and performance bond claims on the Pawtucket and Amtrak projects. In their Amended Answer to Interrogatory No. 9, Rosciti and AHR merely state that Hanover contacted the owners for both projects and that its negotiations with the owner were conditioned on the owners not paying any further contract funds to South Shore. This answer to interrogatory is non-responsive and evasive. Rosciti and AHR did not detail any bases for a claim of fraud or collusion between Hanover and the obligees on the Pawtucket and Amtrak Projects. The fact that Hanover sent a letter to both obligees asking them to at least temporarily cease payment of contract funds to South Shore does not in and of itself show fraud or collusion with the obligees. Obviously, this was an action that Hanover took, as surety, on its own. There was no collusion or fraud with the obligees as Hanover was directing the owners not to make further payments.

This issue is important to Hanover's claim against the Indemnitors under the Indemnity Agreement. Under Rhode Island law, unless the Indemnitors can show fraud or collusion between the surety and the obligees in resolving the bond claims, there are no defenses available

---

others, admitted to Hanover their "default" under the Indemnity Agreement. In doing so, they cannot now object to Request for Admission 8 on the basis that they did not know what a "default" of the Indemnity Agreement means. Further, the Indemnity Agreement lists events constituting default of the Indemnity Agreement in Paragraph 6.

to the indemnitors to the surety's subsequent action to enforce the indemnity agreement. Accordingly, Hanover respectfully requests that this Court order that Rosciti and AHR provide supplemental answers to interrogatories that set forth a factual basis to conclude that Hanover and the obligees on these bonds committed fraud or collusion in Hanover's attempts to resolve the claims under the bonds with the obligees.

4. Requests for Admission 10 – 17 and the accompanying interrogatories deal with the Affirmative Defenses asserted by Rosciti and AHR in response to Hanover's complaint. In posing these Interrogatories, Hanover is attempting to understand the bases for the Affirmative Defenses asserted by Rosciti and AHR.

The answers to Rosciti and AHR to these interrogatories, rather than providing bases for these defenses, merely repeat eight times that Hanover's action in protecting the contract funds on the two bonded projects was wrongful. In the case of Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199(E.D. N.Y. 2007, the court held that an interrogatory asking that a party explain the factual basis for allegations in its pleading was within the scope of allowable interrogatories under Fed. R. Civ. P. 33(c). Accordingly, the party was ordered to disclose facts and documents that supported allegations in its pleading. In this case, the answers of Rosciti and AHR do not set forth the bases for the affirmative defenses. Consequently, Hanover respectfully requests an order of this Court requiring Rosciti and AHR to provide more complete answers to interrogatories, setting forth the bases for all theories or causes of action asserted in the Affirmative Defenses.

## CONCLUSION

For the foregoing reasons, Hanover respectively requests that this Court order that Request for Admission 5, 6, 7, and 8 are admitted by Rosciti and AHR, or, alternatively, that

Rosciti and AHR are required to immediately amend their responses by admitting or denying the requests. Hanover further requests that the Court order that Rosciti and AHR provide more complete answers to interrogatories 9 – 17.

Finally, Hanover respectfully requests its attorney fees and costs for bringing this Motion, pursuant to Fed. R. Civ. P. 37(a)(5) and such other relief as this Court deems just and appropriate.

Respectfully submitted,

THE HANOVER INSURANCE GROUP

By its attorneys,

/s/ Ronald E. Ritland

Ronald E. Ritland, *pro hac vice*
Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
[617] 951.2100

Dated: February 25, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the within was served via electronic mail on the following on this 25th day of February, 2008:

Paul J. Moretti, Sr. – pmoretti@tllaw.com
Christopher M. Mulhearn – cmulhearn@frlawri.com

/s/ Ronald E. Ritland
Ronald E. Ritland

677672_1
2114-92646