UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND

THE HANOVER INSURANCE GROUP,
Plaintiff,

v.

CIVIL ACTION
NO. 1: 06-cv-0276-T-LDA

ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION,
Defendants.

**RESPONSES OF DEFENDANT HENRY ROSCITI AND AHR UTILITY TO PLAINTIFF'S REQUEST FOR ADMISSIONS AND FIRST SET OF INTERROGATORIES TO DEFENDANT HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION**

NOW COMES Defendants, Henry V. Rosciti, Jr. ("Rosciti") and AHR Utility Corporation ("AHR") (collectively the "Defendants"), pursuant to Rules 33 and 36, respectively, of the Federal Rules of Civil Procedure, and hereby answers and responds to Plaintiff, The Hanover Insurance Group's ("Hanover") first set of requests for admissions and second set of interrogatories directed to the Defendants as follows:

**RESPONSES TO REQUESTS FOR ADMISSIONS AND INTERROGATORIES**

**Admission No. 1**

Rosciti and AHR executed the Agreement of Indemnity attached to Hanover's Complaint as Exhibit A.

**RESPONSE No.1**

Rosciti admits only that he executed the Agreement of Indemnity on behalf of himself. AHR admits only that Mr. Anthony Rosciti Jr. executed the Agreement of Indemnity on behalf of AHR.

**Interrogatory No. 1**

If the request for admission is denied, please state in detail the basis for denial.

**ANSWER No. 1**

No answer required.

**Admission No. 2**

Rosciti and AHR received a copy of a letter attached to Hanover's Complaint as Exhibit B.

**RESPONSE No. 2**

Rosciti and AHR admit that they received a copy of the letter attached to Hanover's Complaint as Exhibit B.

**Interrogatory No. 2**

If the request for admission is denied, please state in detail the basis for denial.

**ANSWER No. 2**

No answer required

**Admission No. 3**

Rosciti and AHR executed the letter dated April 13, 2006 and attached to Hanover's Complaint as Exhibit C.

**RESPONSE No. 3**

Rosciti admits only that he signed the letter on behalf of himself. AHR admits that the letter was signed on its behalf by Anthony Rosciti Jr.

**Interrogatory No. 3**

If the request for admission is denied, please state in detail the basis for denial.

**ANSWER No. 3**

No answer required.

**Admission No. 4**

Rosciti and AHR did not post $1.3 million in collateral as requested in the letter attached to Hanover's complaint as Exhibit B.

**RESPONSE No. 4**

Rosciti and AHR admit that they did not post the collateral as requested.

**Interrogatory No. 4**

If the request for admission is denied, please state in detail the basis for denial.

**ANSWER No. 4**

No answer required.

**Admission No. 5**

South Shore Utility Corporation, Inc. ("South Shore") did not resolve the claims submitted by G. Donaldson by making payment to G. Donaldson as set forth in the letter from South Shore's attorney to the attorney for G. Donaldson dated March 22, 2006 and proposed Judgment Stipulation, both of which are attached to these Requests and Interrogatories as Exhibit 1.

**RESPONSE No. 5**

Unable to Admit or Deny.

**Interrogatory No. 5**

If the request for admission is denied, please state in detail the manner in which South Shore resolved the G. Donaldson claim including but not limited to:

1. Details of all communications Rosciti, AHL and/or South Shore had with G. Donaldson concerning resolution.

2. Terms of the agreement between the parties that constituted its resolution.

3. Terms of payment by South Shore to G. Donaldson to resolve the claim.

4. Details of all payments made by South Shore or any other party to G. Donaldson to resolve its claim including check number, date of check, amount of check.

**ANSWER No. 5**

Objection in that this interrogatory asks for information pertaining to transactions between South Shore and G. Donaldson to which Rosciti and AHR were not parties and would call for speculation on the part of Rosciti and AHR. Without waiving said objection, Rosciti and AHR aver that they were not involved with the dealings between South Shore and G. Donaldson regarding the matter referred to in Request for Admission No. 5 and Interrogatory No. 5 so as to be in a position to admit or deny Request for Admission No. 5 or provide the information requested in Interrogatory No. 5.

Furthermore, without waiving said objection, Mr Anthony Rosciti, President of South Shore and AHR, avers that a settlement acceptable to G. Donaldson was negotiated through South Shore's counsel and Mr. Jerry Visconti of G. Donaldson, and the terms of which are in the possession of South Shore.

**Admission No. 6**

Despite receiving payments from the general contractor on the Pawtucket Project for labor and/or materials supplied to the Pawtucket Project by G. Donaldson pursuant to a contract with South Shore, South Shore did not make any payments to G. Donaldson from payments received.

**RESPONSE No. 6**

Unable to admit or deny.

**Interrogatory No. 6**

If the request for admission is denied, set forth in detail the basis for the denial, including but not limited to detailing all payments made by South Shore to G. Donaldson by check number, date, amount and date delivered to G. Donaldson.

**ANSWER No. 6**

Objection in that this interrogatory asks for information pertaining to transactions between South Shore and G. Donaldson to which Rosciti and AHR were not parties and would call for speculation on the part of Rosciti and AHR. Without waiving said objection, while Rosciti and AHR were not involved with the negotiations between South Shore and G. Donaldson regarding the matter referred to in this Request and Interrogatory, based upon information and belief of Rosciti and AHR, any information and documents regarding dealings with G. Donaldson regarding the matter referred to in Request for Admission No. 6 and Interrogatory No. 6 would be within the knowledge and possession of South Shore and counsel for Mr. A. Rosciti. Furthermore, without waiving said objection, AHR avers through its President, Mr. A. Rosciti that partial payments were made to G. Donaldson and that there was a dispute as to the remaining payments due. AHR avers that the details of said transactions are in possession of South Shore.

**Admission No. 7**

Under the terms of the Agreement of Indemnity, Rosciti and AHR had a duty to post collateral in response to Hanover's demand (Exhibit B to Hanover's Complaint).

**RESPONSE 7**

Objection, calls for a legal conclusion which Rosciti and AHR are not qualified to give. Additionally, the terms and conditions of the so-called Indemnity Agreement appended to Hanover's Complaint as Exhibit A speak for themselves.

**Interrogatory No. 7**

If the request for admission is denied, please set forth in detail the basis for the denial.

**ANSWER 7**

No Answer required.

**Admission No. 8**

The failure of Rosciti and AHR to post collateral and/or otherwise indemnify Hanover constituted their default of the Agreement of Indemnity.

**RESPONSE 8**

Denied.

**Interrogatory No. 8**

If the request for admission is denied, please explain in detail the basis for the denial and, specifically, why Rosciti and AHR signed the letter acknowledging default, attached to the Complaint of Hanover as Exhibit C.

**ANSWER 8**

Rosciti and AHR aver that they were attempting to raise funds sufficient to post collateral requested by Hanover, but Hanover caused owners of both the Pawtucket Project and Amtrak Project to cease all payments to South Shore which severely impacted the ability of Rosciti and AHR to secure necessary collateral. Furthermore, Rosciti and AHR signed the letters only after Hanover promised to allow Rosciti Construction to complete the projects and minimize the exposure and risk to Hanover.

**Admission No. 9**

In resolving claims under the payment and performance bonds for the Pawtucket and Amtrak Projects, Hanover did not engage in fraud or collusion with either the owners or obligees on these respective Projects.

**RESPONSE 9**

Objection, calls for a legal conclusion which Rosciti and AHR are not qualified to give. Furthermore, the Defendants are unable to admit or deny because discovery to lead evidence required to prove fraud or collusion is still ongoing.

**Interrogatory No. 9**

If the request for admission is denied, please set forth in detail the facts supporting Rosciti and AHR's claim that Hanover engaged in fraud or collusion with the obligees or owners in resolving the payment and performance bond claims on the Pawtucket and Amtrak Projects.

**ANSWER 9**

Rosciti and AHR aver that they are unable to admit or deny this request since discovery is still ongoing and depositions which would reveal the information requested have not yet been obtained.

**Admission No. 10**

Hanover's claims are not barred by its own breach of contract, to wit: the Agreement of Indemnity as set forth as Affirmative Defense No. 5 in the Amended Answer of Rosciti and AHR to the Complaint of Hanover.

**RESPONSE 10**

Denied.

**Interrogatory No. 10**

If the request for admission is denied, please set forth in detail the basis for the denial, including all facts supporting Rosciti and AHR's claim that Hanover breached the Indemnity Agreement.

**ANSWER 10**

Objection, calls for conclusions of law and information subject to work product privilege. Without waiving said objection, Rosciti and AHR aver that Hanover breached its agreement with South Shore when it caused all income to South Shore to cease, which caused South Shore to be unable to fulfill its obligations. Rosciti and AHR maintain that had Hanover not forced South Shore into insolvency, South Shore would have been able to satisfy its obligation under the Indemnity Contract.

**Admission No. 11**

Hanover's claims are not barred by its own misfeasance and/or malfeasance, as alleged by Rosciti and AHR in their Affirmative Defense no. 6 to the Hanover Complaint.

**RESPONSE 11**

Denied.

**Interrogatory No. 11**

If the request for admission is denied, please set forth in detail the basis for the denial, including all facts supporting Rosciti's and AHR's claim that Hanover engaged in misfeasance or malfeasance in this matter.

**ANSWER 11**

Objection, calls for legal conclusion and information subject to work product privilege. Without waiving said objection, Hanover contacted the owners of the Pawtucket Project and the Amtrak Project and instructed them to make no further payments to South Shore. With all income from both projects cut off, South Shore was unable to continue to meet its contractual obligations, including but not limited to satisfying the construction bond with Hanover. Had income to South Shore not been stopped by Hanover, South Shore avers that it would have been able to satisfy its obligation on the construction bond and the indemnitors would not have been placed in the position of being asked to satisfy the Indemnity Contract.

**Admission No. 12**

Hanover's claims are not barred insofar as they were caused through its own negligence, as set forth in Affirmative Defense No. 7 in the Amended Answer filed by Rosciti and AHR.

**RESPONSE 12**

Denied.

**Interrogatory No. 12**

If the request for admission is denied, please set forth in detail the basis for the denial, including all facts supporting Rosciti and AHR's claim that Hanover was negligent.

**ANSWER 12**

Objection, calls for a legal conclusion and disclosure of information subject to the work product privilege. Without waiving said objection, see Answer 10 and Answer 11.

**Admission No. 13**

Hanover's claims are not barred by its tortious interference with prospective business relations as alleged in Affirmative Defense No. 8 of the Amended Answer filed by Rosciti and AHR.

**RESPONSE 13**

Denied.

**Interrogatory No. 13**

If the request for admission is denied, please set forth all basis for the denial including all facts supporting Rosciti and AHR's claim that Hanover engaged in tortious interference with prospective business relations and also naming all parties whose prospective business relationships were interfered.

**ANSWER 13**

Objection, calls for legal conclusion and information protected by work product privilege. Without waiving said objection, South Shore's prospective business relationships with prospective

clients, including but not limited to, Earth Tech, Amtrak and Pawtucket Water were damaged to the extent that South Shore was in position to receive future contracts and change orders from these companies which it lost based upon the actions of Hanover. Additionally, once Hanover stopped all income to South Shore through notifying the owners of the Pawtucket Project and Amtrak Project to cease payments to South Shore, the reputation of South Shore was damaged to the extent that it could not even seek any further prospective business.

**Admission No. 14**

Hanover's claims are not barred by its tortious interference with contractual relations as alleged in Affirmative Defense No. 9 in the Amended Answer to Hanover's Complaint filed by Rosciti and AHR.

**RESPONSE 14**

Denied.

**Interrogatory No. 14**

If the request for admission is denied, please state in detail the basis for the denial, including all facts supporting the Rosciti and AHR's claim of tortious interference by Hanover and also detailing precisely what contractual relations Hanover interfered with.

**ANSWER 14**

Objection, calls for legal conclusion and information protected by work product privilege. Without waiving said objection, see Answer 10, Answer 11, and Answer 13. Furthermore, Hanover caused the owners of Pawtucket Project and the Amtrak Project to cease payments to South Shore, which was continuing to fulfill its obligations under the construction contracts with the owners of

both projects. The loss of income caused by Hanover interfered with South Shore's ability to complete its contractual obligations on both the Pawtucket and Amtrak projects.

**Admission No. 15**

Hanover's claim is not barred by its own bad faith and unfair dealing as alleged in Affirmative Defense No. 10 of the Amended Answer filed by Rosciti and AHR.

**RESPONSE 15**

Denied.

**Interrogatory No. 15**

If the request for admission is denied, please set forth the basis for the denial in detail, including all facts supporting Rosciti and AHR's claim that Hanover engaged in bad faith and unfair dealing and by stating precisely the instances of bad faith and unfair dealing.

**ANSWER 15**

Objection, calls for legal conclusion and information subject to work product privilege. Without waiving said objection, see Answer 10, Answer 11, Answer 13 and Answer 14. Additionally, Hanover contacted the owners of the Pawtucket Project and the Amtrak Project without the knowledge of South Shore and told them to cease all payments to South Shore. Hanover's actions caused South Shore to become unable to make payments as they came due and created the situation where it was unable to satisfy its obligations. Hanover's actions forced South Shore into insolvency and caused the other indemnitors to be needlessly placed at risk. Had Hanover not forced South Shore into insolvency, South Shore would have been able to satisfy its obligations to both the owners of the Pawtucket Project and Amtrak Project as well as to Hanover.

**Admission No. 16**

Hanover's claim is not barred by its breach of fiduciary duty and/or obligation as set forth in Affirmative Defense No. 11 of the Amended Answer to Hanover's Complaint filed by Rosciti and AHR.

**RESPONSE 16**

Denied.

**Interrogatory No. 16**

If the request for admission is denied, please set forth in detail the basis for the denial, including all facts supporting Rosciti and AHR's claim that Hanover breached a fiduciary duty or obligation, the basis for the fiduciary duty or obligation and the party to whom Hanover owed the duty or obligation.

**ANSWER 16**

Objection, calls for legal conclusion and information subject to work product privilege. Without waiving said objection, see Answer 10, Answer 11, Answer 13, Answer 14 and Answer 15.

**Admission No. 17**

Hanover's claims are not barred by its unfair and deceptive acts and/or practices in violation of Chapter 93A of the Massachusetts General Laws as alleged in Affirmative Defense No. 12 in the Amended Answer to Hanover's Complaint filed by Rosciti and AHR.

**RESPONSE 17**

Denied.

**Interrogatory No. 17**

If the request for admission is denied, set forth in detail the basis for the denial, including the facts supporting Rosciti and AHR's claim that Hanover engaged in unfair and deceptive acts in violation of the statute.

**ANSWER 17**

Objection, calls for legal conclusion and information subject to work product privilege. Without waiving said objection, see Answer 10, Answer 11, Answer 13, Answer 14, Answer 15 and Answer 16.

Submitted by,

Anthony F. Rosciti Jr., President
AHR Utility Corporation

STATE OF RHODE ISLAND
PROVIDENCE COUNTY

The above was subscribed and sworn to before me this 10th day of January 2008.

NOTARY PUBLIC Christopher M. Mulhearn
My Commission Expires: 01.31.09

Submitted by,

____________________________
Henry V. Rosciti Jr.

STATE OF RHODE ISLAND
PROVIDENCE COUNTY

The above was subscribed and sworn to before me this 10 day of JANUARY 2008.

____________________________
NOTARY PUBLIC PAUL MORETTI
My Commission Expires: 5-2-10

As to objections:

Submitted by:

____________________________
Paul J. Moretti Sr., Esq. (#7433)
Tillinghast Licht, LLP
10 Weybosset St.
Providence, Rhode Island 02903
401-456-1200 (Office)
401-456-1210 (Fax)
pmoretti@tllaw.com

CERTIFICATE OF SERVICE

I, Jeannette Jarbeau, hereby certify that on this 10th day of January, 2008, I served the above Response to Plaintiff's Request for Admissions and First Set of Interrogatories to Defendant Henry V. Rosciti, Jr., and AHR Utility Corporation via first class mail, postage prepaid upon:

Kevin C. Cain, Esq. & Ronald Ritland, Esq.,
Peabody & Arnold, LLP,
600 Atlantic Avenue,
Boston, MA 02210

and

Christopher M. Mulhearn, Esq.
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903

Jeannette Jarbeau

@PFDesktop\::ODMA/MHODMA/TLSDMS.TLSLAW.COM;imanage;455998;1