UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION<br>Defendants | CIVIL ACTION NO. 1:06-cv-00276-T-LDA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF HANOVER INSURANCE GROUP'S MOTION FOR PROTECTIVE ORDER AND FOR ORDER QUASHING SUBPOENA**

On April 7, 2008, counsel for the defendants, Anthony R. Rosciti, Jr. and Shannon B Rosciti ("Roscitis"), served a deposition notice and subpoena ordering the presence of the lead trial counsel for plaintiff Hanover Insurance Group ("Hanover"), Ronald E. Ritland, in this action (and consolidated action C.A. 06-392) at his deposition to be commenced on April 14, 2008. Attached to this motion as Exhibit A are copies of the subpoena, deposition notice and the accompanying email from Roscitis' counsel, Christopher Mulhearn, all dated April 7, 2008.

Pursuant to Fed. R. Civ. P. 26(c), Hanover certifies that it has conferred with Roscitis' counsel "in an effort to resolve the dispute without court action." Subsequent to this conference, Hanover sent a confirmatory email on April 7, 2008 to Roscitis' counsel, attached to this motion as Exhibit B. Roscitis' counsel has refused to withdraw the subpoena and deposition notice, and Hanover brings this instant motion for protective order and order quashing the subpoena.

**Relevant Facts and Procedural Posture**

In June of 2006, Hanover filed this contract action to enforce the terms and conditions of an Indemnity Agreement executed by the Roscitis, among others, as indemnitors of Hanover, whereby the indemnitors agreed to indemnify Hanover for any loss, cost and expense occasioned by its having written construction performance and payment bonds on behalf of South Shore Utility Corporation ("South Shore"). In response, Roscitis filed a separate suit in Rhode Island Superior Court, on or about August 1, 2006, which action has, by orders of this Court, been removed and consolidated with this action (C.A. 06-392). Roscitis allege in this action, as well as in counterclaims against Hanover in C.A. 06-276, various causes of action sounding in contract and tort. All of these alleged causes of action are based exclusively on two letters sent by Hanover to owners/obligees on two construction projects which Hanover had bonded on behalf of South Shore. The letters are both dated March 21, 2006 and request that the respective owners/obligees on bonds written by Hanover refrain from releasing further contract funds to South Shore without Hanover's prior written consent. The letters were sent to Earth Tech, Inc. ("Earth Tech") on the project commonly known as Pawtucket Water Treatment Project ("Pawtucket Project") and Amtrak on the project commonly known as Freight Rail Improvements ("Amtrak Project"). Copies of these letters are attached as Exhibit C.

The Roscitis base their entire cause of action in this matter on their allegations that Hanover's sending these letters to Amtrak and Earth Tech was wrongful and caused them damage. Hanover has responded that its action stopping the funds was necessary and consistent with the terms of the Indemnity Agreement, given the fact that there were $1.3 million in claims under the bonds on the Pawtucket Project at the time, and the indemnitors, including the Roscitis, had refused Hanover's previous demand for collateral under the Indemnity Agreement.

Subsequently, pursuant to a letter dated April 13, 2006, South Shore and the indemnitors, including the Roscitis, acknowledged their joint and several default under the construction contracts, bonds and Indemnity Agreement to Hanover. South Shore also wrote letters to Earth Tech and Amtrak on April 13, 2006, acknowledging its default under the construction contract, voluntarily terminating its contract and directing all further payments under the contract to Hanover. Hanover, pursuant to its bonded obligations, arranged for completion of both projects and paid South Shore's unpaid bills, resulting in a total loss of approximately $1.8 million to Hanover, to date.

The parties have engaged in discovery in this matter. In response to production of document requests by the Roscitis, Hanover has produced all non-privileged documents that were requested. Hanover also has answered all interrogatories served upon it by the Roscitis. In addition, Hanover has produced without objection for deposition two of its in-house attorneys, Robert Grennan and Joseph Quinn, having information concerning the South Shore bond claims. Roscitis have also taken the deposition of Paul DeLong, the project manager for Earth Tech on the Pawtucket Project.

This Court filed its scheduling order for C.A. 06-276 on August 23, 2007, setting the discovery closure date at January 15, 2008. This order was modified by further order of this Court dated February 5, 2008, extending the discovery closure date to April 14, 2008.

As stated above, on April 7, 2008, Roscitis' counsel served the deposition notice and subpoena seeking the deposition of Hanover's trial counsel in this matter, for a deposition to commence on April 14, 2008. In the email accompanying the notice (Exhibit A), Roscitis' counsel alleges that Mr. Ritland is a "fact witness" in this matter as justification for this extraordinary action. Roscitis' counsel claims he has concluded that Mr. Ritland was the "point

person" for Hanover in dealing with claims presented by Amtrak and Earth Tech under Hanover's bonds. From this, he concludes that Mr. Ritland's deposition is "necessary." Roscitis' counsel references transcripts of the above depositions, completed in February of 2008, as providing support for his conclusion.

While there are references to Mr. Ritland's involvement in this matter in all three depositions, it is impossible for Hanover to speculate as to the bases for the Roscitis' counsel's conclusion. Hanover specifically reserves its rights to respond to any detail that the Roscitis provide to support its noticing Hanover's counsel's deposition.

In support of this motion, Hanover presents affidavits of Mr. Ritland and Joseph Quinn detailing Mr. Ritland's involvement in matters mentioned by Roscitis' counsel in his April 7, 2008 email. Attached to this motion are Ritland's affidavit as Exhibit D and Quinn's affidavit as Exhibit E. Finally, Roscitis' counsel has agreed to adjourn the deposition to a date subsequent to the final decision on this motion.

**Discussion**

In the opinion of the vast majority of the federal courts considering this issue, including a court in the First Circuit, "it is improper to take the deposition of counsel for one of the parties in the action; any such deposition notice is subject to a motion to quash." 7 Moore's Federal Practice, §30.03[5] (Matthew Bender, 3rd Ed., 2001).

Generally, under the Rules, a district court must limit:

> "[t]he frequency or extent of use of the discovery methods . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the parties seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . ." Fed. R. Civ. P. 26(b)(2)(C).

Also, under Fed. R. Civ. P. 26(c)(1) the court may limit discovery for "good cause shown" and "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Specifically, with respect to subpoenas, pursuant to Fed. R. Civ. P. 45, the court may "quash or modify [a] subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv).

In the typical situation of deposing litigants or witnesses, protective orders that depositions be prohibited under Fed. R. Civ. P. 26(c)(1) are granted only in exceptional circumstances. Also, the Federal Rules of Civil Procedure do not specifically prohibit the taking of the opposing attorney's deposition.[1] However, as one court noted:

> " . . . experience teaches that countenancing unbridled depositions of attorneys constitutes an invitation to delay, disruption of the case, harassment, and perhaps disqualification of the attorney." N.F.A. Corps. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 (M.D. N.C. 1987).

In the seminal case on this issue, the 8th Circuit Court of Appeals in the case of Shelton v. American Motors Co., 805 F.2d. 1323, 1327(8th Cir. 1987), announced:

> "We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation and one that should be employed only in limited circumstances."

The court then set forth a three-part test in deciding whether the depositions should be allowed. The court held that depositions of opposing counsel be:

> "limited to where a party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel (citation omitted); (2) information is relevant and non-privileged; and (3) information is crucial to the preparation of the case." Id. at 1327.

[1] See Fed. R. Civ. P. 30(a)(1): "A party may by oral questions depose any person . . . "

This standard has been adopted by the majority of the federal courts considering this issue, including the First Circuit. See, for example, N.F.A. Corps. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D. N.C. 1987); Dunkin Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208 (P.R. 1998); MacKnight v. Leonard Morse Hosp., 828 F.2d. 48 (1st Cir. 1987); Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421 (E.D. N.Y. 2007); E.E.O.C. v. HBE Corp., 157 F.R.D. 465 (E.D. Mo. 1994); Advanced Systems, Inc. of Green Bay v. A.P.V. Barker P.M.C., Inc., 124 F.R.D. 200 (E.D. Wis. 1989); Harriston v. Chicago Tribune Co., 134 F.R.D. 232 (N.D. Ill. 1990); Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., I.T.T., 125 F.R.D. 578 (N.D. N.Y. 1989); M & R Amusements Corp. v. Blair, 142 F.R.D. 304 (N.D. Ill. 1992); Thiessen v. G.E. Capital Corp., 267 F.3d. 1095 (Cir. 10th 2001). The court has discretion to issue the protective order when any one or more of the Shelton criteria are not met. Boughton v. Cotter Corp., 65 F.3d 823, 830 (10th Cir. 1995).

The burden in proving the necessity for the deposition of opposing counsel is on the party seeking the deposition. "Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a . . . protective order unless the party seeking the deposition can show both the propriety and need for the deposition. N.F.A., 117 F.R.D. at 85. "The burden is on the party seeking the discovery to demonstrate its propriety and need." American Casualty Co. of Reading, Penn. v. Krieger, 106 F.R.D. 582, 585 (S.D. Cal. 1995).

This reasoning was fully adopted in the First Circuit case of Dunkin Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208 (P.R. 1998). In that case, the defendant sought to take the deposition of plaintiff's trial counsel and to disqualify him as counsel at the trial. After noting that, generally, "federal courts have not looked with favor upon attempts to depose opposing

counsel," Dunkin Donuts 181 F.R.D. at 208, and "the federal courts have held that deposing opposing counsel 'inherently constitutes an invitation to harass the attorney and parties, and to disrupt and delay the case,'" (citation omitted) Dunkin Donuts, 181 F.R.D. at 210, the court concludes that "federal courts exercise great care before permitting the deposition of a party's attorney." Dunkin Donuts,181 F.R.D. at 210. The court then reviewed the case law and adopted fully the Shelton test in determining the limited circumstances when the opposing counsel's deposition would be allowed.

In granting the protective order and denying the motion to disqualify, the court found that the mere fact that the attorney had issued, on behalf of the client, a franchise termination letter prior to the law suit being filed was in itself insufficient reason to order the attorney's deposition. Defendant argued it must be allowed to question the attorney on the reasons for the termination. The court disagreed, finding that the attorney was acting as an attorney for the client in issuing the letter, and that defendant had other ways to discover the circumstances under which the termination letter was sent.

Under the criteria annunciated in the Shelton and Dunkin Donuts cases, the Roscitis have not nor can they make any showing here as to both the propriety and need for the deposition of Hanover's counsel in this matter.

Firstly, Hanover has produced to Roscitis all non-privileged documents that they requested pursuant to production of document requests. This includes copies of all correspondence between Mr. Ritland and Earth Tech and Amtrak attorneys. The Roscitis have deposed, without Hanover's objection, two in-house attorneys for Hanover and had the opportunity to question each fully concerning all matters concerning these suits. Roscitis have also deposed the project manager of Earth Tech and, therefore, had the opportunity to question

him as to all communications concerning this matter. Finally, the Roscitis had an opportunity to depose any and all other personnel of Amtrak and Earth Tech concerning any and all communications concerning these projects or these suits.

Therefore, although the Roscitis have had the opportunity to obtain any and all information they seek now to obtain from Attorney Ritland from other sources, they have chosen not to do so. If, as with the deposition of Mr. DeLong, the Roscitis had the opportunity and chose not to inquire concerning these specific matters that they now seek to ask of Mr. Ritland, this is not a basis to require Mr. Ritland's deposition. Quite the contrary, it is another reason to issue a protective order.[2]

Accordingly, the Roscitis have had ample opportunity to discover the same information through either documents and testimony they have already received, or through other discovery methods that they chose not to pursue.

Secondly, to the extent the Roscitis claim that Mr. Ritland is a fact witness due to his alleged contact with Amtrak and Earth Tech, Ritland's affidavit and Quinn's affidavit make clear that Mr. Ritland was involved only as an attorney for Hanover. The affidavits make clear that Hanover retained Mr. Ritland's services to defend it in a suit filed by a subcontractor of South Shore, G. Donaldson Corp., in December 2005. The affidavits also make clear that Hanover retained Mr. Ritland's services to deal with the performance claims presented by Earth Tech and Amtrak by dealing directly with Earth Tech and Amtrak's counsel after South Shore had voluntarily defaulted on both projects and abandoned the work in early April, 2006. Prior to

[2] In the case of Boughton v. Cotter Corp., 65 F.3d 823, 830, 831 (10th Cir. 1995), the court made a similar conclusion: "The record indicates, however, that the plaintiffs did not even fully explore these matters upon which they wish to inquire of defendant's counsel with the witnesses they did depose. It is certainly not too much to expect the plaintiffs to make a reasonable effort to seek information from the sources they chose to pursue."

March 21, 2006, per his affidavit, Mr. Ritland had no contact with Amtrak or Earth Tech personnel. As the Dunkin Donut court held, attorney/client privilege and attorney work product protections preclude any questions of Mr. Ritland concerning the reasons Hanover issued the March 21 letters. Accordingly, any knowledge or information Mr. Ritland has obtained on these issues is necessarily tied in with his serving as attorney for Hanover in this matter and are protected from questioning. This reason, in itself, provides persuasive basis for the issuance of a protective order. See, generally, Dunkin Donuts, Shelton, and N.F.A., and the case of Hickman v. Taylor, 329 U.S. 495 (1947).

Thirdly, in this case, the only arguably material or crucial issue identified by the Roscitis is that the March 21, 2006 letters issued by Hanover was wrongful and damaged South Shore and the Roscitis in some undetermined way. It is not contested that Attorney Ritland issued the letter on behalf of Hanover. It is also uncontested that Attorney Ritland issued the letter only under the instructions of Hanover (See Quinn's deposition, Exhibit E).

Accordingly, there are no crucial issues on which the Roscitis need answers that could only be given by Hanover's trial counsel. As noted, the decision to issue the letters was Hanover's and its attorney was only acting as its spokesman.

As the case law makes eminently clear, "the practice of forcing trial counsel to testify as a witness has long been discouraged." Shelton, 805 F.2d at 1327. The party seeking to force the deposition of opposing counsel bears a significant burden. In this case, the Roscitis have utterly failed to sustain that burden.

The Roscitis' counsel's timing of the deposition for the last day of open discovery in this matter, and less than one week after Attorney Ritland notified the Roscitis' counsel that Hanover intended to file a summary judgment motion, and two months after the last deposition noted

above was completed, all point clearly to the Roscitis' intent to harass Hanover and delay this matter further. By noting his deposition at this time, the Roscitis, knowing that Hanover has invested much and is relying on Mr. Ritland's knowledge in this suit, are clearly attempting to disqualify Attorney Ritland at this late date from participating in the trial of this matter (in any other role than witness, that is).

As the Shelton court clearly recognized, the practice of forcing opposing counsel to testify in the action, absent clear necessity, is not to be condoned.

> "The harassing practice of deposing opposing counsel (unless that counsel's testimony is critical and unique) appears to be an adversary trial tactic that does nothing for the administration of justice, but rather prolongs and increases the cost of litigation, demeans the profession and constitutes an abuse of the discovery process." Shelton, 805 F.2d at 1330.

In conclusion, Hanover prays that this court issue a protective order under Fed. R. Civ. P. 26(c)(1) prohibiting the taking of attorney Ronald Ritland's deposition in this matter and an order quashing the subpoena under Fed. R. Civ. P. 45(c)(3). In addition, Hanover respectfully requests an award of its attorney fees and costs in making this motion, pursuant to Fed. R. Civ. P. 26(c)(3), and such other relief as this Court deems just and appropriate.

Respectfully submitted,

THE HANOVER INSURANCE GROUP,

By its attorneys,

/s/ Kevin C. Cain
Kevin C. Cain, Esq. (#3960)
Ronald E. Ritland, Esq. (*pro hac vice*)
PEABODY & ARNOLD, LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100

DATED: April 11, 2008

**CERTIFICATION**

I, Kevin C. Cain, hereby certify that I caused to be served by electronic means (ECF) a copy of the within document on the 11th of April, 2008 to the following:

Paul J. Moretti, Sr.
pmoretti@tllaw.com

Christopher M. Mulhearn
cmulhearn@frlawri.com

/s/Kevin C. Cain
Kevin C. Cain

680506_1
2114-92646