UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION<br>Defendants | CIVIL ACTION NO. 1:06-cv-00276-T-LDA |
| ANTHONY F. ROSCITI, JR.; and SHANNON B. ROSCITI<br>Plaintiffs<br><br>v.<br><br>THE HANOVER INSURANCE GROUP;<br>Defendants | CIVIL ACTION NO. 1:06-cv-00392-T-LDA |

**PLAINTIFF HANOVER INSURANCE GROUP'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff The Hanover Insurance Group ("Hanover"), pursuant to LR Civ. 56 for the United States District Court of Rhode Island, hereby sets forth the following facts that Hanover contends are undisputed and entitle Hanover to summary judgment under Fed. R. Civ. P. 56, as a matter of law.

1. South Shore was an underground utility contractor doing, among other things, projects in Rhode Island requiring the posting of payment and performance bonds guaranteeing its payment of its project-related bills and its completion of the contracted work. (Attached Affidavit of Hanover Claim Attorney, Joseph P. Quinn ("Quinn Affidavit"), ¶ 3).

2. South Shore applied to Hanover, as surety, to write performance and payment bonds ("Bonds") on its behalf on at least two projects: the Pawtucket Water Treatment Project for owner/obligee Earth Tech, Inc. ("Pawtucket Project"); and the Freight Rail Improvement Project for owner/obligee Amtrak ("Amtrak Project"). (Quinn Affidavit, ¶ 3 and Quinn Exhibit 1).

3. Among the conditions precedent for Hanover agreeing to write the Bonds for South Shore on these two projects, Hanover required the principal owners of and affiliated company to South Shore execute an Indemnity Agreement in its favor.[1] On May 31, 2005, South Shore and individual indemnitors (Defendants), Roscitis, H. Rosciti, and AHR executed an Indemnity Agreement in favor of Hanover. Quinn Affidavit, ¶ 4, and Quinn Exhibit 2 ("Indemnity Agreement").

4. By its terms, among other things, the Indemnity Agreement obligated the defendants/indemnitors to:

a) jointly and severally indemnify Hanover from all loss, attorney/consultant fees, interest and expenses resulting from Hanover having written bonds on behalf of South Shore (Indemnity Agreement, ¶ 2);

b) post collateral with Hanover "as soon as liability exists or is asserted" against Hanover under the bonds in an amount equal to any claimed amounts, or if the claims were unliquidated, in an amount satisfactory to Hanover (Id., ¶ 3);

c) immediately reimburse Hanover for all amounts Hanover paid on bond claims either on its belief that liability under the bonds existed, or that payment "was necessary and

---

[1] At all relevant times, defendants Anthony Rosciti and Henry Rosciti were each 50% shareholders and sole officers of South Shore. Defendant Shannon Rosciti was the wife of Anthony and defendant AHR Utility Corporation was an affiliated company of South Shore. Anthony and Henry were 50% shareholders and sole officers of AHR. (Quinn Affidavit, ¶5).

expedient, whether such liability, necessity, or expediency existed. Vouchers or other evidence of payment by the surety shall be conclusive evidence of the fact and amount of such liability, necessity, expediency and of the Indemnitors' liability to the Surety therefor." (Id., ¶ 3)[2];

d) assign all right, title and interest to, among other things, monies due or to become due under any contract, "whether bonded or unbonded," which assignment is enforceable upon the failure, among other things, of the indemnitors, or any one or more of them, to make any payment due under any contract secured by the Bonds, or generally comply with any term or condition of the Indemnity Agreement. (Id., ¶¶5 and 6);

e) appoint Hanover as their attorney in fact on any assignment granted in the Indemnity Agreement to take possession of all funds on bonded contracts due or to become due (Id., ¶ 9);

f) covenant that all funds on bonded contracts due or to become due are held in trust for the benefit and payment of all bonded contract obligations, the trust funds inuring specifically to the benefit of Hanover (Id., ¶ 7).

5. In reliance on the execution by Defendants of the Indemnity Agreement, Hanover wrote the Bonds on behalf of South Shore on the Amtrak and Pawtucket Projects. (Quinn Affidavit, ¶¶ 3 and 4).

6. On July 29, 2005, South Shore submitted Pay Application 2 on Package 2 of the Pawtucket Project to Earth Tech in the amount of $814,185 for work previously completed on that project. This Pay Application 2 included an application for payment of $694,650 for labor and material supplied to the Pawtucket Project by G. Donaldson, Inc. ("G. Donaldson"). In

[2] In addition, Hanover had the exclusive right to resolve any claim under the Bonds, "take whatever action it deemed appropriate in response," and its decision was "binding and conclusive" upon the Defendants. Id., ¶ 3).

response, Earth Tech paid South Shore the full amount of the Pay Application 2, less 2% (pursuant to an agreement between Earth Tech that Earth Tech would make expedited payments to South Shore in exchange for this 2% reduction), or $797,901.30, by check dated August 10, 2005. (Quinn Affidavit, ¶ 6 and Quinn Exhibit 3).

7. South Shore had previously entered into a subcontract with G. Donaldson whereby South Shore agreed to promptly make payment of the sum of $636,000 to G. Donaldson after South Shore received payment for G. Donaldson's work on the Pawtucket Project from Earth Tech. (Quinn Affidavit, ¶ 7).

8. Despite receiving full payment for G. Donaldson's work from Earth Tech on August 10, 2005, South Shore failed or refused to make any payments to G. Donaldson, other than one payment of $100,000 on or about September, 2005. (Quinn Affidavit,¶ 8). In their Responses to Requests for Admission from Hanover, all Defendants admitted that South Shore had collected these funds, but failed to remit payment to G. Donaldson as its subcontractor. (Roscitis' Second Supplemental Responses to Requests for Admission 5 and 6, attached to this Statement of Undisputed Facts and Memorandum as Exhibit A, and Henry Rosciti/AHR Supplemental Responses to Requests for Admission 4 and 5, attached as Exhibit B).

9. South Shore's failure to pay its subcontractor, G. Donaldson, monies owed to it for work it had completed on the Pawtucket Project, from amounts South Shore had collected from Earth Tech was a default under Paragraph 7 of the Indemnity Agreement (referenced above at Paragraph 4f) requiring South Shore to hold funds received on all projects bonded by Hanover in trust to the payment of bonded obligations. (Quinn Affidavit, ¶ 8).

10. In November, 2005, G. Donaldson filed suit in Rhode Island state court against Hanover and South Shore alleging, among other things, that South Shore had failed to pay it for its work

and was therefore due $536,000, plus interest, costs and attorney fees. (Quinn Affidavit, ¶ 9 and Quinn Exhibit 4).

11. Roscitis' allegation, in its Complaint in C.A. No. 06-276, Docket Entry No. 1, Attachment 1, ("Roscitis' Complaint") and in its Counterclaim in C.A. No. 06-392, Docket Entry No. 16, ("Roscitis' Counterclaim"), in paragraphs 13 and 12, respectively, that "South Shore resolved the Pawtucket Dispute" refers to the G. Donaldson claim. Also, by "resolve," Roscitis do not refer to the actual payment to G. Donaldson by South Shore, which payment was ultimately made by Hanover, but only a promise to pay. (Roscitis' Second Supplemental Responses to Requests for Admission 1 and 2, attached as Exhibit C).

12. By letters dated March 3, 2006, Vellano Brothers, Inc. ("Vellano Bothers") notified South Shore, Hanover and Earth Tech that it had supplied South Shore piping materials for use on the Pawtucket Project from May 2005 to January 2006, totaling $755,000, but had been paid nothing from South Shore. (Quinn Affidavit, ¶ 10 and Quinn Exhibit 5).

13. By letter dated March 17, 2006 to all indemnitors, Hanover demanded that the indemnitors, and each of them, post collateral in the amount of $1.3 million to indemnify and hold Hanover harmless from loss resulting from these two claims. The indemnitors failed and/or refused to post collateral with Hanover as demanded. (Quinn Affidavit, ¶ 11 and Quinn Exhibit 6).

14. Defendant Anthony Rosciti, Jr., individual indemnitor and President of South Shore and AHR, testified neither he nor South Shore nor AHR posted collateral with Hanover as demanded because "we did not have the money, $1.3 million to post collateral and we had defenses to both lawsuits." (Anthony Rosciti, Jr. Deposition, page 60, attached as Exhibit D).

15. Defendant Henry Rosciti, Jr. testified he did not post collateral as demanded because "I didn't have – I didn't have anything or had." (Henry Rosciti, Jr. Deposition, page 22, attached as Exhibit E).

16. Defendant Shannon Rosciti testified she failed to post collateral because she knew nothing of the facts of this case and also testified:

Q. "Do you deny that you owe funds to Hanover?"

A. "No, I'm not denying that."

(Shannon Rosciti Deposition, pages 17 and 19, attached as Exhibit F).

17. In failing to immediately post collateral as demanded, the indemnitors, and each of them, were in default of their joint and several obligations to Hanover under the Indemnity Agreement as of March 21, 2006. Quinn Affidavit, ¶ 12).

18. In their Responses to Requests for Admission from Hanover, defendants H. Rosciti and AHR admitted that the failure to post collateral was a default of the Indemnity Agreement. (H. RoscitiAHR's Supplemental Responses to Request for Admission 8, attached as Exhibit G).

19. In their Responses to Hanover's Requests for Admissions, although they denied that the failure to post collateral was a default of the Indemnity Agreement, Roscitis admitted they had a duty, in response to the Hanover demand of March 17, 2006, to post collateral in favor of Hanover under the Indemnity Agreement and that they had failed to do so. (Roscitis' Second Supplemental Reponses to Request for Admission 10 and 11, attached collectively as Exhibit H).

20. Pursuant to the terms and conditions of the Indemnity Agreement, by letter dated March 21, 2006, Hanover advised Amtrak on the Amtrak Project and Earth Tech of the Pawtucket Project to release no further monies under the respective contracts with South Shore without Hanover's prior written consent. (Quinn Affidavit, ¶ 13 and Quinn Exhibit 7).

21. By letter dated April 13, 2006, all of the indemnitors acknowledged to Hanover their individual and collective defaults under the Indemnity Agreement due to their financial inability to perform their duties under the bonds and contracts on the Pawtucket and Amtrak Projects. (Quinn Affidavit, ¶ 14 and Quinn Exhibit 8).

22. By separate letters dated April 13, 2006, South Shore wrote to Amtrak and Earth Tech to advise each of its default under the respective construction projects, its voluntary termination of those contracts and its direction that all future contract funds be paid to Hanover, as surety. (Quinn Affidavit, ¶ 15 and Quinn Exhibit 9).

23. Pursuant to it obligations under the performance bonds, Hanover arranged for the completion of South Shore's contracts under both the Amtrak and Pawtucket Projects by a replacement contractor. Pursuant to its payment bond obligations, Hanover resolved through payment the claims of labor and material suppliers of South Shore on the two projects which South Shore had refused and/or failed to pay. (Quinn Affidavit, ¶ 16).

24. All Defendants denied the Request for Admission that Hanover did not engage in fraud or collusion with the Pawtucket and Amtrak owners in resolving the claims under the Bonds. In the accompanying Interrogatories, however, they do not set forth any basis for the denials other than to generally state that Hanover was in contact with the Pawtucket and Amtrak owners to negotiate and settle the claims, and that Hanover's request that the owners refrain from paying further contract funds to South Shore, without Hanover's consent, was wrongful. (H. Rosciti/AHR Response to Request for Admission and Interrogatory No. 9, Exhibit I; Roscitis' Supplemental Response to Request for Admission and Interrogatory No. 14, Exhibit J).

25. Hanover has paid losses under the Bonds totaling $1,795,679.54. (Quinn Affidavit, ¶ 17 and Quinn Exhibits 10 and 11).

26. Hanover has incurred a total of $316,329.27 in attorney and consultant fees in resolving the bond claims and pursuing this action against the indemnitors. (Quinn Affidavit, ¶ 18 and Quinn Exhibits 10 and 11).

27. The loss and expense totals $2,112,008.81.

28. In May of 2006, Anthony Rosciti, Jr., as president and major shareholder of South Shore, instituted a receivership action against South Shore in Rhode Island Superior Court. (Quinn Affidavit, ¶ 22).

29. In June of 2006, Hanover filed and served this action under C.A. No. 06-276 to enforce its indemnity rights against Defendants.

30. In August of 2006, Roscitis filed suit in Rhode Island Superior Court against Hanover, also naming H. Rosciti, AHR and South Shore as nominal parties. This action was removed to this court (C.A. No. 06-392), and by order of this Court, the nominal defendants were dismissed from the suit and this action was consolidated with the Hanover suit (C.A. No. 06-276). Roscitis' Complaint and Roscitis' Counterclaim both alleged that Hanover, in sending the March 17, 2006 letters, breached contracts, tortiously interfered with contracts South Shore had with Earth Tech and Amtrak, tortiously interfered with prospective business advantage, acted in bad faith, breached fiduciary duties and engaged in unfair and deceptive trade acts.

31. H. Rosciti/AHR amended their Answer to the Hanover Complaint setting forth Affirmative Defenses repeating the allegations made by Roscitis in their Complaint and Counterclaim as set forth in Paragraph 27, above. (H. Rosciti/AHR Amended Answer, Docket No. 39, C.A. No. 06-276).

32. Prior to its removal to this Court, the Rhode Island State Court action by the Roscitis against Hanover, South Shore, AHR Utility Corporation and Henry V. Rosciti, Jr. was

consolidated with the South Shore receivership action noted above by order of the Superior Court dated August 29, 2006.

33. After due notice to all interested parties and hearing on February 28, 2008, Hanover's amended proof of claim in the receivership action was approved by the Superior Court in the amount of $1,795,679.54. The Court, in approving Hanover's amended proof of claim, considered the same documentation submitted here as part of the Quinn's Affidavit. The court took Hanover's additional claim for attorney/consultant fees under advisement pending an in camera review of the individual attorney and consultant bills. (Quinn Affidavit, ¶ 23).

Respectfully submitted,

THE HANOVER INSURANCE GROUP

By its attorneys,

Ronald E. Ritland

Ronald E. Ritland, *pro hac vice*
Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
[617] 951.2100

Dated: June 20, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the within document was served via electronic mail on the following on this 20th day of June, 2008:

Joseph D'Angelis – jdeangelis@tllaw.com
Christopher Mulhearn – cmulhearn@frlawri.com

/s/ Ronald E. Ritland
Ronald E. Ritland