UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE HANOVER INSURANCE GROUP,<br><br>Plaintiff<br><br>vs.<br><br>ANTHONY F. ROSCITI, JR.; HENRY V. ROSCITI; and A.H.R. UTILITY CORPORATION,<br><br>Defendants | : | C.A. No. 06-276T |
| ANTHONY F. ROSCITI, JR. and SHANNON B. ROSCITI,<br><br>Plaintiffs<br><br>vs.<br><br>THE HANOVER INSURANCE GROUP; SOUTH SHORE UTILITY CONTRACTORS, INC., by and through Jonathan N. Savage, Esq., duly appointed Permanent Receiver of South Shore Utility Contractors, Inc.; HENRY V. ROSCITI; And A.H.R. UTILITY CORPORATION | : | C.A. No. 06-392T |

**A.H.R. UTILITY CORPORATION AND HENRY V. ROSCITI JR.'S RESPONSE TO PLANITIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, A.H.R. Utility Corporation and Henry V. Rosciti, Jr. (collectively, the "Responding Defendants"), and each of them, by and through counsel, and hereby submit the within memorandum in support of the Responding Defendants' accompanying objection to Plaintiff, The Hanover Insurance Group's ("Hanover") Motion for Summary Judgment in connection with the above-entitled action.

## I. <u>Introduction</u>

Plaintiff Hanover is seeking to recover damages it claims to have suffered due to a default suffered under an indemnity agreement. However, it is Hanover's own actions that precipitated the very default that it now seeks to profit from. Hanover's actions were made with full knowledge of the situation and calculated to lead to the very default that occurred.

It is beyond dispute that Hanover's action adversely impacted South Shore's business operation, resulted in its inability to complete the Pawtucket Project and Amtrak Project and further, resulted in a significant loss that now forms the basis of Hanover's claims in the instant matter. Hanover took this action on March 21st even though it was fully apprised of the status of South Shore's settlement with G. Donaldson Construction Inc. ("G. Donaldson"), its good faith position with respect to the Vellano Bros. dispute, the fact that South Shore was not in default of its contracts with the project owners for the Pawtucket Project and Amtrak Project and that South Shore was faithfully discharging its scope of work and completing the same relative to the subject projects. In essence, all Hanover's self-serving action did was leverage an acknowledgment of default from South Shore, and the individual indemnitors, and hasten the demise of a previously successful business operation.

Hanover's conduct should not be rewarded by the granting of a summary judgment with respect to the Roscitis' Counterclaim. Rather those claims should be permitted to be presented to a fact finder for judicial determination as to whether or not the defendants have set-offs against Hanover with respect to its indemnification claim.

## II. **Pertinent Facts**

In lieu of a lengthy recitation of the facts and travel of this case, the Responding Defendants hereby adopt the facts as set forth in the Responding Defendants' contemporaneously filed Statement of Undisputed Facts.

## III. **Argument**

### A. Standard of Review

The critical inquiry for a court upon a motion for summary judgment is whether a genuine issue of material facts exists. "Material facts are those that might affect the outcome of the suit under the governing law." *Morrissey v. Boston Five Cents Savings Bank,* 54 F.3d 27, 31 (1st Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S., 242, 248 (1996)). "A dispute as to material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

On a motion for summary judgment, the court must view all evidence, and related inferences, in the light most favorable to the non-moving party, here, the Responding Defendants. *See Springfield Terminal Railway Company v. Canadian Pacific Limited*, 133 F.3d 103, 106 (1st Cir. 1997). "When the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). Similarly, "summary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Electric Company*, 777 F.Supp. 167, 169 (D.R.I. 1991).

B. Disputed Facts Preclude The Entry of Summary Judgment

Summary judgment is inappropriate because the record is rife with disputed material facts. In its Memorandum, Hanover points to a default under an indemnity agreement between the Responding Defendants and Hanover. However, Hanover virtually ignores Responding Defendants' affirmative defenses predicated upon the facts and circumstances surrounding the alleged "default" as opposed to the alleged default itself.

As a result, there are insufficient undisputed facts for the Court to make a determination as to liability or any other substantive claims. Viewed in a light most favorable to the Responding Defendants, the facts established in this Memorandum and the accompanying Responding Defendants' Statement of Undisputed Facts, provide a complete defense to the claims now asserted by Hanover.

C. Hanover's conduct created an event of default for South Shore, and thus, artificially triggered Hanover's claims under the Indemnification Agreement.

It is undisputed that on or about March 21, 2006, South Shore was not in default of any of its contractual obligations relative to either the Pawtucket Project or Amtrak Project. Moreover, at the same time, South Shore was in the process of faithfully discharging its scope of work and completing the same pursuant to its contracts with the project owners.

It is also undisputed that, on or about March 21st, Hanover was apprised that South Shore reached an agreement as to settlement terms with G. Donaldson relative to G. Donaldson's disputed claim. Affidavit of Henry V. Rosciti at ¶16 Finally, at the same time, Hanover was aware of South Shore's good faith position with respect to its dispute of the so-called Bros. claim.

Despite its appraisal of the situation; there being no defaults under the project contracts or the Indemnity Agreement as of March 21, 2006; and even though it did not have any direct

contractual relationship with either project owner, Hanover took it upon itself to communicate directly with the project owners for the Pawtucket Project and the Amtrak Project, and instructed both to not release any further contract funds to South Shore absent Hanover's express consent, which never came.

Hanover's actions created an event of default for South Shore with respect to its contracts with the project owners for the Pawtucket Project and Amtrak Projects, where one otherwise did not exist. Further, Hanover's precipitous action triggered a default under the Indemnity Agreement. In fact, at or about the time that Hanover communicated directly with the project owners for the Pawtucket Project and Amtrak Project, Hanover was *simultaneously* in the process of communicating with South Shore in order to address what it perceived may be certain issues and/or concerns relative to the subject projects, payment of subcontractors, and the completion of South Shore's contractual obligations.

Finally, less than two (2) full business days after Hanover purported to make demand upon the individual indemnitors that they post additional collateral, without giving reasonable opportunity to the indemnitors to consider and act upon Hanover's request, Hanover contacted the project owners directly for the Pawtucket Project and Amtrak Project.

Simply put, neither South Shore nor the indemnitors had a fighting chance in light of Hanover's overreaching, overly aggressive and precipitous action. All Hanover ultimately accomplished was creating a default for South Shore and the individual indemnitors. Additionally, South Shore was rendered unable to consummate its settlement with G. Donaldson. Even more, Hanover's conduct leveraged eventual acknowledgments of voluntary default from the indemnitors, and a letter of direction of payment from South Shore.

It is beyond dispute that all of Hanover's actions were conducted despite its full knowledge of the attendant facts and circumstances. These actions constituted a significant variance from its established course of conduct in dealing with South Shore up to that point in the parties' relationship. As a result of Hanover's conduct, the indemnitors have been placed at a significant disadvantage and irreparably harmed. Hanover should not be rewarded for these actions.

Thus, the Responding Defendants' Counterclaim should be permitted to be presented to a finder of fact for determination as to whether they have legitimate set-offs against Hanover's indemnification claims in light of Hanover's actions.

## IV. Conclusion

WHEREFORE, for the foregoing reasons, the Responding Defendants respectfully pray that this Court (1) deny Hanover's motion for summary judgment; (2) assign Hanover's Complaint and the Responding Defendants' Counterclaim for trial; and (3) award to the Responding Defendants such other further relief as this Court may deem fair, just and reasonable.

Respectfully submitted,
A.H.R. Utility Corporation &
Henry V. Rosciti, Jr.
By their Attorneys,

/s/ Jeffrey M. Crudup
Joseph DeAngelis (#1395)
Jeffrey Crudup (#7721)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th FL
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
Email: jdeangelis@apslaw.com
Email: jcrudup@apslaw.com

Dated: ______________________________

**CERTIFICATION**

I hereby certify that on this ______ day of July, 2008, the foregoing was served upon **Ronald E. Ritland, Esq.,** via e-mail @ rritland@peabodyarnold.com; **Kevin C. Cain, Esq.**, via e-mail @ kcain@peabodyarnold.com; **Christopher M. Mulhearn.**, via e-mail @ cmulhearn@frlawri.com; and **John P. Connelly, Esq.**, via e-mail @ jconnelly@peabodyarnold.com.

/s/ Jeffrey M. Crudup______________

*463151_3*