UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE HANOVER INSURANCE GROUP,<br><br>Plaintiff<br><br>vs.<br><br>ANTHONY F. ROSCITI, JR.; HENRY V. ROSCITI; and A.H.R. UTILITY CORPORATION,<br><br>Defendants | : | C.A. No. 06-276T |
| ANTHONY F. ROSCITI, JR. and SHANNON B. ROSCITI,<br><br>Plaintiffs<br><br>vs.<br><br>THE HANOVER INSURANCE GROUP; SOUTH SHORE UTILITY CONTRACTORS, INC., by and through Jonathan N. Savage, Esq., duly appointed Permanent Receiver of South Shore Utility Contractors, Inc.; HENRY V. ROSCITI; And A.H.R. UTILITY CORPORATION | : | C.A. No. 06-392T |

**A.H.R. UTILITY CORPORATION AND HENRY V. ROSCITI JR.'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, Henry Rosciti, Jr. and A.H.R. Utility Corporation (collectively, the "Responding Defendants"), and each of them, by and through counsel, pursuant to Local Rule (civil) 56 of the United States District Court for the District of Rhode Island, and hereby submit the within statement of undisputed facts in support of their objection to Hanover's motion for summary judgment in connection with the above-entitled action as follows:

1. In or about 2006, Anthony F. Rosciti, Jr. ("A. Rosciti") was the President and fifty percent (50%) shareholder of South Shore Utility Contractors, Inc. ("South Shore"). *See* Affidavit of Henry V. Rosciti, Jr. at ¶1 ("Rosciti Affidavit").

2. In or about 2005, The Hanover Insurance Group ('Hanover") furnished certain performance and payment bonds on behalf of its principal, South Shore, naming Earth Tech and O. Ahlborg and Sons, Inc. (collectively, "Earth Tech"), respectively as obligees for that certain project known as the Pawtucket Water Treatment Facility (the "Pawtucket Project") in the total amount of Five Million Six Hundred Sixteen Thousand Thirty Dollars and 00/100 ($5,616,030.00) (the "Pawtucket Project Bonds"). *See* Rosciti Affidavit at ¶2.

3. In addition, at or about that same time, Hanover furnished certain payment and performance bonds or on behalf of its principal, South Shore, naming the Amtrak-National Railroad Passenger Corporation ("Amtrak"), as obligee for a project known as the Freight Rail Improvement Project, twenty-four (24) inch water main relocation in Providence, Rhode Island ("the "Amtrak Project") in the amount of Three Hundred Sixty-Five Thousand Nine Hundred Dollars and 00/100 ($365,900.00) (the "Amtrak Project Bonds"). *See* Rosciti Affidavit at ¶3.

4. In or about May, 2005, South Shore, A. Rosciti, Shannon B. Rosciti ("S. Rosciti"), Henry Rosciti ("H. Rosciti") and A.H.R. Utility Corporation ("AHR"), each executed an Agreement of Indemnity (the "Indemnity Agreement") in favor of Hanover relative to the Pawtucket Project Bonds and the Amtrak Project Bonds, respectively. *See* Rosciti Affidavit at ¶4.

5. Subsequent to the commencement of the Pawtucket Project and Amtrak Project, respectively, and during South Shore's discharge of its scope of work in connection with these projects, South Shore had disputes with two (2) of its subcontractors regarding payment. *See* Rosciti Affidavit at ¶5.

6. One of the disputes involving the Pawtucket Project related to measurement and payment terms in a subcontract. That dispute involved G. Donaldson Construction Co., Inc. ("G. Donaldson"), with whom South Shore ultimately reached an agreement as to settlement, payment terms and a payment schedule relative to the subject dispute in or about March, 2006. South Shore's subcontract with G. Donaldson was a quantity and sum certain subcontract, and not simply a lump sum contract. *See* Rosciti Affidavit at ¶6.

7. In fact, South Shore, by and through its counsel, advised Hanover, by and through its counsel, as to the pendency of South Shore's agreement to settle and pay an agreed-upon amount with respect to the G. Donaldson claim. *See* Rosciti Affidavit at ¶7.

8. At or about this same time, South Shore and Hanover were engaged in a dialogue and Hanover had requested certain information relative to the G. Donaldson claim, as well as the South Shore's status with respect to the Pawtucket Project and Amtrak Project, respectively, and its financial condition. *See* Rosciti Affidavit at ¶8.

9. In fact, on March 21, 2006, the very same day that Hanover wrote directly to the project owners for the Pawtucket Project and Amtrak Project, respectively, and instructed each of them to not release further contract funds to South Shore absent Hanover's express consent, Hanover, by and through its counsel, made a written request upon South Shore to review certain of South Shore's financial information and/or documents, and further, to meet to review the same with A. Rosciti and South Shore's other shareholder, H. Rosciti. *See* Rosciti Affidavit at ¶9.

10. Notwithstanding, however, without prior notice to or the consent of South Shore, and despite South Shore's good faith efforts, on March 21, 2006, Hanover contacted the project owners directly, and instructed each of them that nor further contract funds be released to South Shore. *See* Rosciti Affidavit at ¶10.

11. On or about March 21, 2006, South Shore was still on the job discharging its scope of work relative to the Pawtucket Project and Amtrak Project, respectively, and further, was not in default of its contracts with the project owners in connection with the same. *See* Rosciti Affidavit at ¶11.

12. Hanover's March 21st communication occurred less than two (2) full business days following its March 17, 2006 demand to the indemnitors under the Indemnity Agreement that they post additional collateral. *See* Rosciti Affidavit at ¶12.

13. As of March 21, 2006, the Responding Defendants were not in default of the Indemnity Agreement insofar as they had not yet had a reasonable opportunity to consider and act on Hanover's March 17th demand to post additional collateral. *See* Rosciti Affidavit at ¶13.

14. The other subcontractor dispute also involved the Pawtucket Project, wherein a subcontractor, Vellano Bros., was applying payments on the Pawtucket Project and other "bonded" work to only outstanding requisitions on "non-bonded" projects, and, thus creating an inflated receivable. South Shore's records supported its position with regard to Vellano Bros. *See* Rosciti Affidavit at ¶14.

15. Hanover had knowledge that South Shore had settled the dispute with G. Donaldson, and that South Shore's records supported South Shore's position relating to the Vellano Bros. dispute. *See* Rosciti Affidavit at ¶15.

16. Despite the settlement of the G. Donaldson dispute, and the good faith position advanced by South Shore relative to the Vellano Bros. dispute, Hanover took it upon itself on March 21, 2006, to communicate directly with the owners on both the Pawtucket Project and the Amtrak Project, respectively, and further notified and directed those owners not to make any further payments to the South Shore, which said action was without the prior knowledge or

authorization of South Shore, and despite the fact that South Shore was not in default of those project contracts. *See* Rosciti Affidavit at ¶16.

17. As a result of Hanover's motions, South Shore's "flow of funds" from the subject projects was "cut-off" and South Shore could not consummate the G. Donaldson settlement. *See* Rosciti Affidavit at ¶17.

18. Hanover took this March 21st action even though South Shore had not defaulted on its contracts, that neither South Shore nor any of the individual indemnitors had acknowledged any voluntary default under the Indemnity Agreement, and South Shore had not yet consented to a letter of direction with respect to the payment of remaining contract funds relative to the subject projects. *See* Rosciti Affidavit at ¶18.

19. Hanover's March 21, 2006 communication, and the resulting effect of the same created a default of South Shore relative to the Pawtucket Project and Amtrak Project where one previously and otherwise did not exist as of March 21st. *See* Rosciti Affidavit at ¶19.

20. By April, 2006, with all income from the Pawtucket Project and Amtrak Project "cut-off", South Shore no longer had the ability to conduct an otherwise successful business, including completing the subject projects and so advised Hanover. *See* Rosciti Affidavit at ¶20.

21. However, South Shore's principal, A. Rosciti was able to secure a take-over arrangement with Rosciti Construction that ensured the completion of the Pawtucket Project and Amtrak Project, respectively, despite Hanover's action. *See* Anthony Rosciti Affidavit at ¶21.

22. A. Rosciti only executed, and acknowledged, a voluntary default on behalf of himself and South Shore on or about April 13, 2006, as well as signed a direction of payment letter on behalf of South Shore because he was advised by Hanover that unless he did so Hanover would not consent to the take-over arrangement that he had secured on South Shore's

behalf with Rosciti Construction relative to the Pawtucket Project and Amtrak Project, respectively. *See* Anthony Rosciti Affidavit at ¶22,

23. Insofar as South Shore had no ability to continue in its business A. Rosciti ultimately petitioned South Shore into a Rhode Island Court receivership proceeding in May, 2006.

24. South Shore's default and inability to perform under its contracts resulted from Hanover's direction to the owners of the Pawtucket Project and Amtrak Project not to remit any further contract funds to South Shore, thereby resulting in South Shore's "flow of funds" relative to these projects being "cut-off" and South Shore being left with no ability to continue business operations.

Respectfully submitted,

Henry V. Rosciti, Jr. &
A.H.R. Utility Corporation
By their Attorneys,

/s/ Jeffrey M. Crudup
Joseph DeAngelis (#1395)
Jeffrey Crudup (#7721)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th FL
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
Email: jdeangelis@apslaw.com
Email: jcrudup@apslaw.com

Dated: ______________________________

**CERTIFICATION**

I hereby certify that on this ______ day of July, 2008, the foregoing was served upon **Ronald E. Ritland, Esq.,** via e-mail @ rritland@peabodyarnold.com; **Kevin C. Cain, Esq.**, via e-mail @ kcain@peabodyarnold.com; **Christopher M. Mulhearn.**, via e-mail @ cmulhearn@frlawri.com; and **John P. Connelly, Esq.**, via e-mail @ jconnelly@peabodyarnold.com.

/s/ Jeffrey M. Crudup________

*462987_1.doc*